# Richmond.

## LIMBAUGH v. COMMONWEALTH.

### November 22, 1927.

1. SEDUCTION—*Evidence—Declarations of Prosecutrix to Her Mother and Doctor as to Paternity of Her Child—Case at Bar.*—In the instant case, a prosecution for seduction, prosecutrix was asked if she told her mother and her doctor who was the father of her child, to which she replied that she had told them that accused was the father. The declarations of prosecutrix as to the paternity of the child were not made in the presence of the accused.

    *Held:* That this testimony was inadmissible as self-serving and immaterial as it could add nothing to the testimony of the prosecutrix as to the paternity of the child, and the objections to the questions should have been sustained.

2. DECLARATIONS AND ADMISSIONS—*Corroboration of Witness—Admissibility.*—Declarations of a witness made out of court are not admissible for the purpose of corroborating his testimony in court, for the reason that such evidence is hearsay.

3. SEDUCTION—*Evidence—Proof of Other Crimes—Case at Bar.*—In a prosecution for seduction defendant had testified that the doors of his office could not be locked. A former stenographer of the defendant was called and the prosecuting attorney stated that he intended to show by her what happened to her and "that the doors could be locked." Counsel for the accused objected, saying that the prosecution wanted to bring out what happened between accused and the stenographer. The court agreed that what happened between accused and the stenographer was inadmissible and said that it would instruct the jury that they could consider the stenographer's evidence only for the purpose of showing that the doors could be locked. The prosecuting attorney, however, did not confine his questions to the locks on the doors, but manifestly intended to get the stenographer's tale before the jury, and the court said nothing about the locks on the doors in its instructions but said it admitted the evidence for the purpose of meeting the testimony of other witnesses for the defendant. The stenographer testified that the accused locked the door and grabbed her, but that she grabbed up the phone to call for help and he let her go. A motion was made to strike out this testimony but was overruled.

*Held:* That the testimony was not offered for the purpose of impeaching the veracity of defendant as a witness, but of showing his attitude in his intercourse with other women, and was highly prejudicial.

4. CRIMINAL LAW—*Evidence—Evidence of Other Crimes—Case at Bar.*—The accused comes to trial to meet the specific charge against him, not to vindicate or to explain every collateral charge that may be made in the course of the introduction of the evidence. His general reputation for specific traits of character he is always presumed to be ready to vindicate, but to require him to meet a specific charge in a prosecution for seduction of an alleged assault on another woman would unduly prejudice his case.

5. CRIMINAL LAW—*Directing Verdict—Setting Aside Verdict of Not Guilty.*— It is said that the practice of directing a verdict of acquittal in a criminal case does not obtain in Virginia, though, in the absence of fraud, no power has yet been discovered which can set aside a verdict of not guilty in a criminal case.

6. QUESTIONS OF LAW AND FACT—*Evidence—Weight and Credibility of Testimony.*—The jury are the sole judges of the credibility and weight of testimony. If the evidence is relevant, it should be received, and the jury should be permitted to determine its credibility and weight.

7. CRIMINAL LAW—*Evidence—Striking Out Evidence.*—The trial court can strike out evidence that is relevant only where, after giving full faith and credit to the witnesses and drawing all inferences from their testimony that a jury might fairly draw therefrom, it plainly appears that the trial court would feel compelled to set aside a verdict found in accordance therewith.

8. SEDUCTION—*Motion to Strike Out Evidence for Commonwealth—Case at Bar.*—In the instant case, a prosecution for seduction, the defendant at the conclusion of the evidence for the Commonwealth moved to strike it out on the ground that it did not make out a case of seduction, and, even if it did, prosecutrix was not corroborated. This the court refused to do.

*Held:* That the ruling of the court was proper as the case was not one in which it plainly appeared that the trial court would have felt compelled to set aside a verdict of guilty if returned by the jury.

9. SEDUCTION—*Married Man—Unmarried Man—Appeal to Affections of Prosecutrix.*—In the case of seduction by an unmarried man, it must appear that there was an appeal in some way to the affections of the woman seduced. But the Virginia statute (Code of 1919, section 4410) recognizes that there may be seduction by a married man, and provides for the punishment therefor, and the fact that the statute punishes as a crime seduction by a married man, is a recognition of the fact that there are other means by which, within the

meaning and intent of the statute, a female of previous chaste character may be led astray from the paths of virtue.

10. SEDUCTION—*Common Law—Construction of Statute.*—Seduction was not a crime at common law, but is wholly a creature of statute, and from the statute the intention of the legislature must be gathered.

11. SEDUCTION—*Leading Astray—Married and Unmarried Man.*—Whether the man be married or not, there must be a leading astray of the female from the paths of virtue. Mere sexual intercourse is not sufficient. But the means by which the female may be led astray are not necessarily the same in the case of a married man and one who is not married.

12. SEDUCTION—*Married Man—Definition.*—Seduction by a married man is the offense of inducing an unmarried female, of previous chaste character, to consent to unlawful sexual intercourse by enticements and influences which overcome her scruples.

13. SEDUCTION—*Married Man—Leading Astray.*—There may be seduction by a married man, without "urgent importunity based upon professions of attachment." The offense consists in leading astray from the paths of virtue of a female of previous chaste character. If other means than appeals to the affection of the female overcome her scruples, debase her nature and draw her aside from the path of virtue, the offense has been committed.

14. SEDUCTION—*Married Man—Leading Astray—Doctor ana Patient—Case at Bar.*—In the instant case, a prosecution for seduction, the defendant occupied a confidential relation to the prosecutrix, that of doctor and patient. He was thirty-five years of age and she seventeen. She established a good character for truth and veracity, and for virtue and chastity. She stated that she refused to have sexual intercourse with the defendant until he assured her that without it he could not help her, and that she thought that as he was a doctor he ought to know.
*Held:* That if her statement was believed defendant came within the meaning and intent of the statute (Code of 1919, section 4410).

15. SEDUCTION—*Evidence—Corroboration of Prosecutrix's Evidence—Code of 1919, Section 4413.*—Under section 4413 of the Code of 1919, there can be no conviction of seduction based on prosecutrix's testimony "unsupported by other evidence"—that is, evidence which does not emanate from the mouth of the female seduced or rest wholly upon her credibility. The corroborating evidence must be other evidence which adds to, strengthens, confirms and corroborates her. If there be evidence so tending to corroborate, its weight is a question for the jury under proper instructions from the court.

16. SEDUCTION—*Conflicting Instructions—Preponderance of Evidence.*—In a prosecution for seduction, an instruction for the Commonwealth standing alone was amenable to objection as leading the jury to believe that they could convict the accused on a mere preponderance

13

of evidence. Another instruction given for the defendant fully
covered the subject of proof beyond a reasonable doubt, and the
jury could not have been misled.

*Held:* Not reversible error.

17. INSTRUCTIONS—*Witnesses—False Testimony of a Witness—Disregarding
all the Testimony of Such Witness.*—In a prosecution for seduction,
the court instructed the jury that if they believed that one or more
of the witnesses testified falsely about any material point, they
might disregard the whole of the testimony of such witness or
witnesses. The instruction omitted the word "knowingly" or any
equivalent word, such as "wilfully," or "intentionally," before the
word "testified."

*Held:* That the omission of the words "knowingly," etc., was error.

18. INSTRUCTIONS—*Witnesses—False Testimony of a Witness—Disregarding
all the Testimony of Such Witness.*—Where the court instructed the
jury that if they believed that one or more of the witnesses had
"testified falsely" about any material point in his or her testimony,
they might disregard the whole of the testimony of such witness or
witnesses, the words "testified falsely" are not the equivalent of
"knowingly testified falsely."

19. INSTRUCTIONS—*Witnesses—False Testimony of a Witness—Disregarding
all the Testimony of Such Witness.*—An instruction that if the jury
believed that a witness or witnesses, naming them, knowingly
testified untruthfully on any material matter, they were at liberty
to disregard the whole of the witness' or witnesses' testimony, is
error, as naming a particular witness or witnesses.

20. INSTRUCTIONS—*Witnesses—False Testimony of a Witness—Disregarding
all the Testimony of Such Witness.*—If it is an admitted or uncontro-
verted fact, or there is clear and convincing evidence in the case that
a witness or witnesses therein has or have wilfully, or which is the
same thing, knowingly, testified untruthfully on any material matter,
an instruction, if couched in general terms, to the effect that if the
jury believe from the evidence that any witness or witnesses in the
case have so testified, they are at liberty to disregard the whole of
their testimony, may, in the discretion of the trial court, be given.

21. INSTRUCTIONS—*Witnesses—False Testimony of a Witness—Disregarding
all the Testimony of Such Witness.*—The trial court in instructing
the jury that if they believe a witness has knowingly or wifully
testified untruthfully they may disregard the whole of his testimony,
should, in every case, act with caution; it should never give such
an instruction unless from all the evidence it believes that wilful
false swearing has been done; and even then it should refuse to give
such an instruction if it feels that the jury would be warranted by
the evidence in coming to a different conclusion as to such testimony.

22. APPEAL AND ERROR—*Reversal—Where Party has had a Fair Trial.*—

Where a party has had a fair trial on the merits of his case and substantial justice has been reached, the judgment of the trial court should not be disturbed on mere technical grounds if it can be avoided consistently with the orderly administration of justice.

23. APPEAL AND ERROR—*Reversal—Where Party has had a Fair Trial—What Constitutes a Fair Trial—Exclusion of Improper Testimony.*—But the exclusion of improper testimony of a damaging nature and a correct statement of the law applicable to the case, when the law is stated, are essentials of a fair trial.

Error to a judgment of the Corporation Court of the city of Staunton.

*Reversed.*

The opinion states the case.

*W. M. Bass, Jr., Timberlake & Nelson*, and *Curry & Carter*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Lewis H. Machen, Assistant Attorneys-General*, and *Floridus Crosby*, for the Commonwealth.

BURKS, J., delivered the opinion of the court.

H. A. Limbaugh was convicted of the seduction of Irene Carroll, a girl of seventeen years of age, and sentenced to the penitentiary for a term of four years.

Limbaugh and his wife were chiropractors and had practiced their profession in Staunton for several years prior to August, 1925. Their office was on the second floor of a building on one of the public streets of the c ty. Back of the office, they had their private apartment. There was a large reception room on the front of the apartment, with one door communicating with a small operating room and another with a dressing room where patients were prepared for operations. There was a partition between the dressing room and the

operating room.  This partition was made of beaver boards, or other light material, about six feet high and not extending to the ceiling by about four feet.  There was a doorway in this partition over which a curtain was usually drawn when a treatment was being given. The duration of a treatment was generally from four to six minutes.

The Limbaughs sometimes had from thirty to forty patients a day.  Among their patients were H. N. Sackett and his wife of Fishersville, a small village about seven miles east of Staunton.  The prosecutrix, Irene Carroll, lived in the same village.  She was subject to "epileptic fits."  The Sacketts thought they had been benefited by the treatment of Dr. Limbaugh, and persuaded the prosecutrix and her mother, who were quite poor, to permit them to take Irene to Staunton for consultation with and treatment by him. Accordingly, on August 6, 1925, the Sacketts took Irene and her mother in their car to Staunton for the consultation.  Dr. Limbaugh took a history of the case, and agreed to treat Irene daily for ten days for $15.00, and thereafter every other day for a while and later at intermittent times, if necessary, for $1.00 a treatment.  They had never met each other before this introduction.  Irene was taken back and forth for these treatments by Mr. or Mrs. Sackett, or both of them.  Usually Mrs. Sackett remained at the office while the treatment was being given, and was there on August 8, 1925.

Irene testified that at the third treatment Dr. Limbaugh told her that he could not help her unless she would have intercourse with him, but that she declined; that he told her that he had been examined and could not have children, and as he had told her that he could not help her unless she had intercourse with him,

she then consented.   She further testified that this
intercourse first took place on the 8th of August, 1925,
and most every time thereafter when she went to his
office for treatment, "about twenty or more, most every
time I went."   After the lapse of about six months she
found that she was pregnant, but told no one of it,
not even her mother, and on May 2, 1926, gave birth
to a full time child of which she claimed Dr. Limbaugh
was the father.

[1] When the prosecutrix was being examined in
chief, she was permitted, over the objection of the
accused, to testify as follows:   "Q. Did you tell her
(your mother) whose baby it was?   A. She asked me
to tell her, and I told her that I would in a few minutes,
and I told her it was Dr. Limbaugh's.   Q. What did
you say to Dr. Mosby?   A. He asked me whose it
was, and I said it was Dr. Limbaugh's."   Each of
these questions was objected to promptly, the objec-
tion was overruled, and exception duly taken.   After
the answers were given, a motion to strike them out
was made and overruled, and exception taken.   These
declarations were made to the mother and the attend-
ing physician at the time the child was born and in the
absence of Dr. Limbaugh.   They were plainly self-
serving and immaterial.   They could add nothing to
the testimony of the prosecutrix as to the paternity of
the child, and the objection to the questions should
have been sustained.

[2] "Declarations of a witness made out of court are
not admissible for the purpose of corroborating his
testimony in court, for the reason that such evidence
is hearsay.   *Oliver* v. *Commonwealth*, 77 Va. 590;
*Howard* v. *Commonwealth*, 81 Va. 488; *Repass* v. *Rich-
mond*, 99 Va. 508, 39 S. E. 160; *Jessie* v. *Commonwealth*,
112 Va. 887, 890, 71 S. E. 612." *Atkins* v. *Commonwealth*,
132 Va. 500, 510, 110 S. E. 379, 382.

The defendant had testified that the construction of his office was such that the doors could not be locked. In the course of his cross-examination, the jury was sent out of the room, and the prosecuting attorney stated: "I am going to show what happened to Miss Lane, and that the doors can be locked." Counsel for the accused objected to testimony as to what happened to Miss Lane, saying: "He wants to bring in what happened between Dr. Limbaugh and this girl, and it has nothing to do with the issue in the case we are trying here." The court concurred in this view, saying: "Absolutely, and I will instruct the jury that they can consider it for no purpose than to show that the doors could be locked." In rebuttal, however, when Miss Lane was offered as a witness, the prosecuting attorney did not confine his questions to the locks on the doors, but manifestly intended to get Miss Lane's tale before the jury. Nor did the trial judge say anything about the locks on the doors, but ruled in language that was not distinct and clear on this point. As soon as Miss Lane was offered as a witness, the trial judge said: "I am going to permit this evidence for the purpose of meeting the testimony of other witnesses for the defendant, to show what weight you may give to this evidence. It is not to show whether the man is guilty of anything in this trial." Miss Lane had testified that she had taken dictation in the operating room twice. She was not then asked whether or not there was any lock on the door of the operating room, but was permitted to testify, over the objection of the defendant, as follows:

"Q. Tell the jury what happened on one of these occasions?

"A. One time, I was sitting out in the front, in the reception room, and Doctor Limbaugh called me, and

told me to bring my note book and pencil in the operating room, and I asked him why not give me the dictation in the same room where he had been giving me the dictation, and he said to come back in that room, that it was more private in there, and the patients would not hear what he was dictating, if they should happen to come in. When I got in there, he turned the key in the door, and put the key in his pocket, and he grabbed hold of me, but I grabbed up the phone to call for help, and then he let me go and opened the door.''

[3] Motion was also made to strike out this answer, but was overruled and exception taken. This ruling was highly prejudicial to the accused.

The testimony was offered not for the purpose of impeaching the veracity of the defendant as a witness, but of showing his attitude in his intercourse with women.

[4] In *Colvin* v. *Commonwealth*, 147 Va. 663, 137 S. E. 476, 477, it is said: ''There is much to be said in favor of putting before the jury a man's general reputation in the community relevant to the character of the offense with which he is charged, though not first put in issue by him,'' but this would not warrant the reception of testimony of an alleged isolated assault upon another woman under entirely different circumstances. Conceding the relevancy of such testimony, there is much relevant testimony that is rejected on account of undue prejudice, unfair surprise, or confusion of issues. 1 Greenl. Ev. (16th ed. by Wigmore), section 14a. The accused comes to trial to meet the specific charge against him, not to vindicate or to explain every collateral charge that may be made in the course of the introduction of the evidence. His general reputation for specific traits of character he is

always presumed to be ready to vindicate, but to require him to meet such a charge as was made by the witness, Lillian Lane, would be an unfair surprise to him, would unduly prejudice his case before the jury, and if the details of his denial were gone into would unduly protract the trial and have a tendency to confuse the issue the jury were sworn to try. His general reputation as to his intercourse with women was a legitimate subject of inquiry, but not the specific assault alleged.

In Jones on Evidence (2d ed.), section 143, it is said: "It is a familiar rule that it is improper, on the trial of a defendant for a crime, to prove that he has committed other crimes, having no connection with the one under investigation. Such other acts of criminality or immorality are not legally relevant and should not be dragged in to prejudice the defendant or to create a probability of guilt." See also 10 R. C. L., page 951, section 121; *Dillard* v. *Collins*, 25 Gratt. (66 Va.) 343, 359; *Price* v. *Commonwealth*, 21 Gratt. (62 Va.) 846, 868.

There are some apparent exceptions to this rule, where the object is to show guilty knowledge, motive, design, etc., but they need not be noticed as they have no application to the instant case.

[5] At the conclusion of the evidence for the Commonwealth, the defendant moved to strike it out, because (1) the evidence of the prosecutrix did not make out a case of seduction, and (2), even if it did, her testimony was not corroborated as required by the statute. The motion amounted to a directed verdict of acquittal. It is said we have no such practice in Virginia, though, in the absence of fraud, no power has yet been discovered which can set aside a verdict of not guilty in a criminal case. *Montgomery* v. *Commonwealth*, 98 Va. 852, 856, 37 S. E. 1.

[6–8] The jury are the sole judges of the credibility and weight of testimony. If the evidence is relevant, it should be received, and the jury should be permitted to determine its credibility and weight. The trial court can strike out evidence that is relevant only where, after giving full faith and credit to the witnesses and drawing all inferences from their testimony that a jury might fairly draw therefrom, it plainly appears that the trial court would feel compelled to set aside a verdict found in accordance therewith. The instant case does not come within this principle, and the trial court committed no error in overruling the motion to strike.

Counsel for the accused express the opinion "that the crime of seduction cannot be committed by a married man without an appeal, in some way, to the affections of the woman seduced," and in support of that opinion make the following quotation from an able and thoughtful article of Mr. Charles Curry, of the Staunton, Virginia, bar, citing many cases, and reported in 5 Va. Law Reg. 208: "The consideration which draws the female aside from the path of virtue must, in some way or other, be an appeal to her affections, and the artifices and wiles used must be to gain her confidence and win her heart. Without this, it is believed there can be no seduction under this statute. Not only is this true, but the illicit connection essential to complete and perfect the crime must have resulted from and have been the actual consequence of the artifices based upon the pretentions of affection, and not the result and consequence of some other cause."

[9] Such, as a general rule, is undoubtedly the fact in the case of seduction by unmarried men, but the statute also recognizes the fact that there may be seduction by a married man, and provides the punishment therefor.

In the instant case, the prosecutrix knew that the accused was a married man, living with his wife, and there is no claim that there was any appeal to the affections of the prosecutrix. We have no case directly in point, and the cases from other jurisdictions, many of which we have examined, throw little or no light on the question, and are of little aid in the interpretation of our statute.

[10, 11] Seduction was not a crime at common law, but is wholly a creature of statute, and from the statute we must gather, as best we can, the intention of the legislature. Whether the man be married or not, there must be a leading astray of the female from the paths of virtue. Mere sexual intercourse is not sufficient. But the means by which the female may be led astray are not necessarily the same in the case of a married man and one who is not married. As said in *Flick* v. *Commonwealth*, 97 Va. 766, 769, 34 S. E. 39, 41: "It must be borne in mind that the offense here charged is seduction by a married man, which of itself excludes many of the arts, wiles and professions and promises which may be brought to bear by a single man to establish a footing and influence with a woman and thus become the means by which he accomplishes her ruin."

But notwithstanding this exclusion, the fact that the statute punishes as a crime seduction by a married man, is a recognition of the fact that there are other means by which, within the meaning and intent of the statute, a female of previous chaste character may be led astray from the paths of virtue. The means adopted may be different in different cases, but it is said that "if in fact they accomplish the object, they are sufficient in law." Bish. Stat. Crime, section 640.

In *Flick* v. *Commonwealth*, *supra*, the prosecutrix

knew that Flick was a married man. She had grown up in intimate association with him, and mutual affection existed between them; but it is said that: "By what precise wiles, arts or artifices he at the fatal moment induced her to yield her person to his embraces we cannot say." He was forty-three years of age, she sixteen. It was there held that what constitutes "seduction" within the meaning of what is now section 4410 of the Code cannot be defined with precision. "Each case must be determined by its own circumstances. The crime may be complete, although in the particular case 'flattery, false promises, artifice, urgent importunity based upon professions of attachment and the like for the woman' did not conspire to cause the surrender of her person and chastity to her alleged seducer. But there must be something more than sexual intercourse proved. A female of previous chaste character must have been led astray from the paths of virtue. This is the offense."

[12] The following instruction given in that case was also approved: "Seduction, as applied to this case, is the offense of inducing an unmarried female of previous chaste character, by a married man, to consent to unlawful sexual intercourse by enticements and influences which overcame her scruples."

In Abbot's Law Dict., title "Seduce," seduction is defined as "the wrong of inducing a female by enticements and persuasions overcoming her reluctance and scruples."

[13] It thus appears that there may be seduction by a married man, without "urgent importunity based upon professions of attachment," and *that* the offense consists in leading astray from the paths of virtue of a female of previous chaste character. If other means than appeals to the affection of the female overcome her

scruples, debase her nature and draw her aside from the path of virtue, the offense has been committed. If the enticements and influences used to accomplish the purpose of "overcoming her reluctance and scruples" and cause her to submit to the intercourse to which she would not otherwise have submitted, "they are sufficient in law."

[14] In the instant case, the defendant occupied a confidential relation to the prosecutrix, that of doctor and patient. He was thirty-five years of age, she seventeen. She established a good character for truth and veracity, and for virtue and chastity. If her statement be true, that the refused to have sexual intercourse with him until he assured her that without it he could not help her, and that she thought that as he was a doctor he ought to know, then he comes within the meaning and intent of the statute.

[15] The defendant denied most positively every material statement of the prosecutrix connecting him with the alleged crime. Under the terms of the statute (Code, section 4413)* there can be no conviction based on her testimony "unsupported by other evidence," that is, evidence which does not emanate from the mouth of the female seduced or rest wholly upon her credibility. The corroborating evidence must be other evidence which adds to, strengthens, confirms and corroborates her. If there be evidence so tending to corroborate, its weight is a question for the jury under proper instructions from the court.

---

*Section 4413. The evidence necessary to convict; limitation of prosecution; marriage a bar to conviction.*—No conviction under sections forty-four hundred and ten and forty-four hundred and eleven shall be had on the testimony of the female seduced, abducted, or detained, unsupported by other evidence, nor unless the indictment shall be found within two years after the commission of the offense; provided, that the subsequent marriage of the parties may be pleaded in bar of a conviction.

[16] Instruction E, given for the Commonwealth, was objected to on the ground that it was misleading and led the jury to believe that they could convict the accused on a mere preponderance of the evidence. Standing alone the instruction might be amenable to the objection raised, but instruction 1, given for the defendant, fully covered the subject of proof beyond a reasonable doubt, and the jury could not have been misled.

[17–21] Instruction F, given for the Commonwealth, was as follows: "The court instructs the jury that if they believe that one or more of the witnesses have testified falsely about any material point in his, her or their testimony, they may disregard the whole of the testimony of such witness or witnesses." In the brief for the Commonwealth it is admitted that "such an instruction as this has never been given by a Virginia trial court. In two instances error has been assigned for failure of the trial court to give the instruction and each time the court held it was not error to have refused to give the instruction." *Hash* v. *Commonwealth*, 88 Va. 172, 199, 13 S. E. 398; *Jarrell* v. *Commonwealth*, 132 Va. 551, 110 S. E. 430. In the same brief, referring to this instruction, it is also said: "The Commonwealth's attorney rang the changes on it in his argument to the jury."

The instruction in the *Hash Case* told the jury that if they believed that a designated witness "wilfully swore falsely," that such false testimony "vitiated and destroyed the whole of his evidence." This was a manifest invasion of the province of the jury, and need not be further noticed.

In the *Jarrell Case* the court instructed the jury "that if they believe that Harry Jarrell and J. P. Thomas, or either of them, have knowingly testified untruthfully

on any material matter in this case, they are at liberty to disregard the whole of their testimony." This court, after reviewing the authorities elsewhere, announced its own conclusion as follows:

"Our own views upon the subject under consideration are as follows: The credibility of witnesses is so peculiarly and exclusively within the province of the jury that we think it would be improper for the court to give such an instruction as that under consideration, which was refused in the case before us, because of its singling out by name certain witnesses. We think that naming of any particular witness or witnesses in such an instruction would tend to lodge upon the minds of the jury the impression that the trial judge is not satisfied as to the truth of the testimony of the witness or witnesses mentioned; which would certainly be an improper invasion of the province of the jury. If indeed it is an admitted or uncontroverted fact, or there is clear and convincing evidence in the case that a witness or witnesses therein has or have wilfully, or which is the same thing, knowingly, testified untruthfully on any material matter, such an instruction as that under consideration may, in the discretion of the trial court, be properly given, if couched in general terms, to the effect that if the jury believe from the evidence that any witness or witnesses in the case have so testified, they are at liberty to disregard the whole of their testimony. But the trial judge should, as to such an instruction, in every case, act with caution; he should never give such an instruction unless from all the evidence he believes that wilful false swearing has been done; and even then he should refuse to give such an instruction if he feels that the jury would be warranted by the evidence in coming to a different conclusion as to such testimony."

It will be observed that the instruction, in the instant case, omits the word "knowingly" or any equivalent word, such as "wilfully," or "intentionally," before the word "testified." Some such word was necessary to conform to the decision in the *Jarrell Case*, and when we are told by the brief of the Attorney-General that "the Commonwealth's attorney rang the changes" on the instruction as given, we cannot treat the omission as accidental, or as unnecessary. Neither can we say that the words "testified falsely" were the equivalent of *"knowingly* testified falsely." Many honest and truthful men testify falsely, but not "knowingly" so. That word or its equivalent was essential to the correctness of the instruction, and that fact was brought to the attention of the prosecuting attorney and the trial court by the objection to the instruction. The trial court certifies that the "defendant excepted to the action of the court in giving said instruction, upon the ground that the instruction told the jury that they might disregard the testimony of a witness if he or she testified falsely about any material point which was erroneous because such false testimony must have been given knowingly or wilfully." The omission was not accidental, but intentional, and the trial court must have thought it was unnecessary. We think otherwise, and it was upon the instruction as given, with the words "knowingly" or "wilfully" omitted, that the prosecuting attorney "rang the changes." This was error. An instruction of this kind with the word "wilfully" inserted before "testified" was condemned in *Siever* v. *Coffman*, 80 W. Va. 420, 92 S. E. 669, and in *Levine Bros.* v. *Mantell*, 90 W. Va. 166, 111 S. E. 501. We adhere to what was said in the *Jarrell Case*.

[22, 23] Where a party has had a fair trial on the merits of his case and substantial justice has been

reached, the judgment of the trial court should not be disturbed on mere technical grounds if it can be avoided consistently with the orderly administration of justice. But the exclusion of improper testimony of a damaging nature and a correct statement of the law applicable to the case, when the law is stated, are essentials of a fair trial.

For the errors hereinbefore pointed out, the judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded to the trial court for a new trial, not inconsistent with the views hereinbefore expressed.

*Reversed.*