**Richmond**

JOSEPH W. CARTER, III

V.

COMMONWEALTH OF VIRGINIA

April 30, 1982.

Record No. 810416.

Present: All the Justices.

*Thomas J. Foltz; E. Thompson MaGoffin, Jr.,* for appellant.

*Richard B. Smith, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

Joseph W. Carter, III, was convicted, following a bench trial, of the possession of tools with intent to commit larceny, in violation of Code § 18.2-94.[1] He was sentenced to five years in the penitentiary. The sole issue on appeal is whether the evidence is sufficient, as a matter of law, to sustain the conviction.

In the early afternoon of June 25, 1980, Police Officers E. T. Sines and Frank L. Bradley, while traveling along the George Washington Parkway, observed Andre Braxton standing behind a large tree approximately 100 yards to the rear of a residence. After stopping their vehicle, the officers observed the defendant at the back door of the residence. Officer Sines was suspicious because the defendant was wearing a wool sport coat and the temperature was 95°.

Carter left the rear of the house and went to the front door. He rang the door bell and was met by Lisa Murphy, a babysitter. Murphy testified that the defendant told her he was lost and wanted to get back to the District of Columbia.

Sines approached Carter as he left the house and ordered him to stop. A search revealed a large screwdriver (over 12" long) in the inside pocket of Carter's coat. Carter was also carrying a towel. He told Sines his automobile "had broken down" and he had approached the residence to get help. He explained that he used the screwdriver to adjust the carburetor of the vehicle. The defendant also told Sines he had picked up Braxton as a hitchhiker and that he had asked him to remain at the tree line.

Thereafter, the two officers, the defendant, and Braxton went to Carter's automobile. The car was over a half mile from the residence. There were a number of other houses closer to the defendant's automobile and more visible from the Parkway than the residence in question. The officers asked Carter to start the vehicle, and Sines testified that it started immediately.

Officer Bradley, an experienced burglary investigator, characterized the screwdriver as one "you would use for prying up a window or a door after you got the door partially opened." He also testified he had spoken with Braxton at the scene and Braxton had denied knowing Carter.

---

[1] § 18.2-94. *Possession of burglarious tools, etc.*—If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.

Carter testified in his own defense that he had been experiencing difficulties with the car all day and that he was lost. He further related that he stopped the car several times and attempted to adjust the carburetor by using the screwdriver, which he was carrying in his coat pocket. Carter decided to go to the residence to seek help. His primary intent was to call his sister and tell her he would be late picking her up from work. Carter admitted he said nothing to the babysitter about having car trouble and he didn't ask to use the telephone.

On cross-examination, Carter stated there were several people at the place where he stopped his car, but he didn't ask anyone there for assistance. He admitted he had been convicted of two felonies.

Braxton generally corroborated Carter's testimony as to the car trouble and their being lost. However, he testified that Carter had gotten the screwdriver from the the trunk after they stopped on the Parkway. Further, he stated he had known Carter for about three months prior to the time of the alleged offense. Both Carter and Braxton denied any wrongdoing, and Officer Sines testified he found no physical evidence of an attempted break-in.

■ Carter first contends the trial court erred in refusing to strike the Commonwealth's evidence at the end of its case-in-chief. He asserts the Commonwealth's prima facie case was dependent upon the presumption found in the second sentence of the statute, and that the Commonwealth was not entitled to the benefit of the presumption because it presented no evidence that Carter was not a "licensed dealer."[2] We need not address this argument. The defendant, by presenting evidence on his behalf, waived his right to stand on his motion to strike. *Inge* v. *Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976); *Spangler* v. *Commonwealth*, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948). We will therefore weigh the sufficiency of the evidence by examining the entire record.

---

[2] Defendant also argues the Commonwealth had the burden of proving he was not a "licensed dealer" as an element of the offense. This is not the case. Upon proof that one not a licensed dealer is in possession of "burglarious tools," the Commonwealth is entitled to a presumption on intent, shifting the burden to the defendant to explain the possession. *Nance* v. *Commonwealth*, 203 Va. 428, 124 S.E.2d 900 (1962); *Burnette* v. *Commonwealth*, 194 Va. 785, 75 S.E.2d 482 (1953). However, the Commonwealth is free, as it seeks to do here, to prove its case without the benefit of the presumption.

■ In passing upon the sufficiency of the evidence, we are guided by certain well-established principles. Since the fact finder had the opportunity of hearing and observing the witnesses, its findings are entitled to great weight. The evidence and all just and reasonable inferences therefrom must be viewed on appeal in the light most favorable to the appellee. In addition, the verdict of the trial court will not be disturbed unless it appears to be plainly wrong or without evidence to support it. *Higginbotham* v. *Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

■ Finally, since evidence of the defendant's intent is wholly circumstantial, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Inge* v. *Commonwealth,* 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976). *See also Stover* v. *Commonwealth,* 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981).

The evidence established a number of facts consistent with the defendant's guilt. He was a stranger in the neighborhood. He passed by people and houses closer to his car to get to the residence in question. He left his companion at the tree line. Defendant was wearing a wool coat on a hot summer day, concealing a screwdriver that could be used in a break-in. He claimed he had car trouble and that Braxton was a hitchhiker. The car, however, started without difficulty.

■ The trier of fact was entitled to draw reasonable inferences from these facts. Thus, it could infer that the defendant passed by other residences because they appeared occupied or were more visible from the road. Braxton was positioned in such a way as to serve as a lookout. The towel could prove to be of assistance in a break-in. The court was also free to infer that Carter and Braxton had something to hide by denying they had known each other before the day in question.

Defendant asserts his evidence presents an hypothesis consistent with innocence. The trial court, however, was free to weigh Carter's and Braxton's testimony and to judge their credibility. Their stories conflicted with other evidence in the case, with the statements they gave the police at the time of the incident, and, in some respects, with each other. Further, Carter was a convicted felon. "The fact finder need not believe the accused's explanation and may infer that he is trying to conceal his guilt." *Black* v. *Commonwealth,* 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).

We cannot say the evidence viewed as a whole fails to "exclude every reasonable hypothesis of innocence." Nor can we say the judgment of the trial court is plainly wrong or without evidence to support it. Therefore, the judgment of conviction will be affirmed.

*Affirmed.*