COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Beales and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


CHRISTIAN LAMAR SWEAT

MEMORANDUM OPINION[*] BY
v.      Record No. 2239-09-1       JUDGE RUDOLPH BUMGARDNER, III
AUGUST 17, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Kathleen A. Ortiz, Public Defender, for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


Christian Lamar Sweat appeals his conviction of obtaining money by false pretenses, Code

§ 18.2-178.  He maintains the evidence was insufficient to prove an intent to defraud because the

Commonwealth failed to prove he knew the items sold were stolen.  Finding the evidence supports

the finding that he had the intent to defraud, we affirm.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  Viewing the record

through this evidentiary prism requires us to "'discard the evidence of the accused in conflict

with that of the Commonwealth, and regard as true all the credible evidence favorable to the

Commonwealth and all fair inferences to be drawn therefrom.'"  Parks v. Commonwealth, 221

Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137,

82 S.E.2d 603, 606 (1954)) (emphasis omitted).  As an appellate court, moreover, our

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

examination of the record "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008), aff'g, 49 Va. App. 285, 640 S.E.2d 526 (2007); Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009).

A Wii video game console, games for it, and other items were stolen during a breaking and entering. The next day, the defendant, aged 24, his two minor brothers, aged 13 and 12, and one or two others went to the Game Stop store and exchanged the stolen property for similar video game equipment. The store manager testified the defendant entered the store with three others and all four approached the counter. The two younger brothers placed the items they wanted to trade on the counter. They were the items stolen the prior day and included the Wii game system. The younger brothers said they wanted to trade for another Wii game system. The manager told them the store was sold out of the Wii system, so they traded for an Xbox 360, which is a rival brand to the Wii game system.

Store policy required a picture ID from someone 18 years or older who would take responsibility for the exchange because the store could not trade with minors. The store clerk obtained the defendant's driver's license and entered his identifying information from the license into the store computer. The defendant also had to furnish a telephone number, which he did using his mother's cellular phone number rather than his own.

The clerk entered in the store's computer a list of the serial numbers of the items traded and the values assigned to them. The store gave a total credit of $268 for the items traded and acknowledged receipt of $45 cash in payment of a balance of $41.21 owed in exchange for the Xbox 360. The clerk printed a receipt that contained all the data related to the exchange. Just above the signature block, at the bottom of the print out, the receipt affirmatively stated that the

person signing and completing the transaction was the sole owner of the property. The defendant signed in the signature block at the bottom of the receipt.

Four days later, Detective Vernon Ryder while investigating the burglary went to the Game Stop and learned the serial numbers on the receipt matched the serial numbers provided by the owners of the stolen property. He then interviewed the defendant who denied having ever sold a Wii game system. When the detective said he would be checking with certain pawnshops, the defendant changed his story. He then admitted he sold a Wii game system for his brothers though he claimed he did not know who had the Wii or who asked him to sell it. The defendant maintained he was in another part of the store looking at merchandise and the receipt was brought to him and signed there. The detective doubted that the defendant did not go to the counter to sign the receipt. As he explained to the defendant, the explanation did not comport with the procedures the store had to follow.

The defendant made a motion to strike the evidence at the conclusion of the Commonwealth's case-in-chief. The trial court denied the motion stating, "looking at it in the light most favorable to the Commonwealth, there is a *prima facie* case."

> In order to convict one of larceny by false pretenses, however, the Commonwealth must prove four elements of the offense charged: (1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property.

Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976).

There was sufficient evidence proving the defendant intended to defraud the Game Stop store. When the defendant signed the receipt at the Game Stop store, he represented that he was the sole owner of the items being traded. In his statements to the police, the defendant admitted that he was not the owner. But for this misrepresentation, the store would not have parted with

- 3 -

its merchandise. He initially lied to the detective when he said that he had never sold a Wii game system and only admitted doing so when the detective said he was going to check at pawnshops. The defendant was in recent possession of stolen property, which he traded at a pawnshop. Signing the Game Stop receipt was an out-of-court admission of his possession of stolen property, and the sale was an exercise of dominion and control over the property.

In Roberts v. Commonwealth, 230 Va. 264, 337 S.E.2d 255 (1985), the defendant also argued that the Commonwealth failed to show he knew the property in question was stolen. The Court held:

> It is true, of course, that an essential element of the offense of receiving stolen property is guilty knowledge. It is also true that no witness testified directly that the defendant knew the property in question was stolen. But the element of guilty knowledge may be supplied by circumstantial evidence, including the circumstance that the accused was in possession of recently stolen property.

Id. at 270, 337 S.E.2d at 259 (citations omitted).

The mother, the two youngest brothers, and the defendant testified for the defense. The youngest brother, Josh, aged 12, testified that he and his brother Kyle had stolen the games. He maintained that he had placed all the stolen items in a book bag that he carried to the counter. He stated that the defendant did not know what he had in the bag or that they were stolen. Josh stated that he purchased some games and then went and got the defendant to sign the receipt. After that, Josh said he had purchased additional games.

On cross-examination, Josh stated that he was trading the Wii system because he was bored with it, but the defendant did not know he was going to exchange items at the store. Josh admitted he initially told the detective that he had informed the defendant he had bought the items for $10, but he maintained that he had not really told that story to the defendant. Josh said he did not give the clerk $45 in cash and did not think Kyle had done so. He knew the defendant did not provide the cash. At first, Josh said Jaquan, a friend who had accompanied them, did not

- 4 -

provide the cash but on re-direct he became pretty sure that Jaquan had done so. Josh maintained he went to the store because he wanted an Xbox 360, but he could not remember if he had first asked for a Wii system.

Kyle, aged 13, also testified. He maintained that he had not taken part in the breaking and entering but had learned of it from Josh. He also maintained the defendant did not know the games were stolen and had not gone to the counter. When asked if cash was needed to complete the trade, he replied that maybe a couple of dollars were paid. He testified that Josh had paid $3. Kyle also claimed that after the trade he had separately bought a second controller for the Xbox 360 with $30 cash that he had with him. Kyle testified that the defendant did not have to sign for the purchase of the second controller and that purchase had nothing to do with the trade the defendant completed. Kyle was positive they did not try first to trade for another Wii system.

The defendant testified in his own defense. He stated he was called to the front of the store to sign the receipt because he was over 18. He denied telling the detective that his brother had brought the receipt to him to sign while he was in another part of the store. The defendant took his younger brothers to the Game Stop, but he did not ask them what they planned to do and the brothers did not tell him why they were going there. The defendant maintained his younger brothers picked out the precise system they wanted to buy and paid the cash balance after the defendant had signed the receipt and left the counter.

The defendant and his brothers asserted broadly that the defendant had no reason to suspect the items were stolen, took no part in the transaction at the counter, and other than signing the receipt, did not even know what the brothers were doing. However, many inherent and indispensable details of their separate accounts were internally contradictory, inconsistent with other defense testimony, and irreconcilable with uncontested factual details.

At the conclusion of all the evidence, the trial court found the defendant guilty beyond a reasonable doubt. The judge explained her reasoning:

> [A]t the close of the Commonwealth's case and the reason I would not strike the evidence is there was a *prima facie* case, but I don't know from a reasonable doubt standard, at the end of all the evidence, if I could say there was no reasonable hypothesis of innocence until you put those witnesses on.

This statement is an accurate recital of the sequential evaluations of evidence made as a trial court first rules on a motion to strike at the conclusion of the Commonwealth's case-in-chief before a subsequent ruling on guilt or innocence at the conclusion of all the evidence.

The standard applied to a motion to strike after the Commonwealth rests is stated in Limbaugh v. Commonwealth, 149 Va. 383, 140 S.E. 133 (1927).

> The trial court can strike out evidence that is relevant only where, after giving full faith and credit to the witnesses and drawing all inferences from their testimony that a jury might fairly draw therefrom, it plainly appears that the trial court would feel compelled to set aside a verdict found in accordance therewith.

Id. at 393, 140 S.E. at 135. The trial court accepts the evidence of the Commonwealth and draws all inferences that a reasonable jury might draw.

The trial court next explained its evaluation of the evidence and the reasoning it applied at the conclusion of all the evidence. "I became very clear and convinced he was guilty after the testimony of the witnesses, his brothers, who I thought were the cutest thing, Mom, but they were not telling the truth here."

The trial court then directed its comments to the defendant who had testified last:

> I find it incredible you would not know – you are 24. Do you know how many guys your age there are, 24, 25, and 50 still playing those games as if they were kids? They know the difference between Wii and everything else, and you don't have to know --- they are your brothers, but they went through so much to say you did not know. Shakespeare writes about they protest too much.

The trial court then concluded its evaluation of the evidence and pronounced judgment: "I'm the trier of fact, and I state for the record that I don't believe the testimony of the witnesses, and because of that, that is enough now for me to be convinced beyond a reasonable doubt that you are guilty and I so find."

The defense argues that the Commonwealth never proved the defendant knew the game system and the games were stolen. He maintains that taking the Commonwealth's evidence alone, there was nothing to establish the defendant's knowledge that the items his brothers traded were stolen. His argument concludes that the trial judge's disbelief of the defense witnesses was not sufficient to prove an affirmative element of the crime, knowledge the items were stolen. In his argument the defendant stresses the testimony of the defense witnesses that the defendant did not know the items were stolen.

The defense argument miscasts the procedural posture of the case and misconstrues the trial judge's rulings.

> When a defendant in a civil or criminal case proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's evidence in chief, he waives his right to stand upon such motion. Plaintiff's case may be strengthened by defendant's evidence. If thereafter a motion is made to strike the evidence or to set aside the verdict, the court must consider the entire record in reaching its conclusion.

Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948) (citations omitted).

The trial court had ruled at the conclusion of the Commonwealth's evidence that there was sufficient evidence to permit a finding of guilty. As the trial court said, there was a *prima facie* case, but establishing *prima facie* does not mandate a finding of guilt. It only means there could be a finding of guilt beyond a reasonable doubt. At the conclusion of all the evidence, the trial court assessed the Commonwealth's evidence and the defense evidence. For reasons that are obvious from the transcript even without the benefit that the trial judge had of hearing and

observing the witnesses, the defense witnesses need not be believed. When the trial court did decide that the defense witnesses were not credible, there remained nothing that refuted or contradicted the affirmative evidence of the Commonwealth nor did any reasonable inferences of innocence arise from the evidence that countered the reasonable inferences of guilt.

The situation is similar to that in Carter v. Commonwealth, 223 Va. 528, 290 S.E.2d 865 (1982), where the defendant and his witness gave statements that conflicted.

> Defendant asserts his evidence presents an hypothesis consistent with innocence. The trial court, however, was free to weigh Carter's and Braxton's testimony and to judge their credibility. Their stories conflicted with other evidence in the case, with the statements they gave the police at the time of the incident, and, in some respects, with each other. Further, Carter was a convicted felon. "The fact finder need not believe the accused's explanation and may infer that he is trying to conceal his guilt."

Id. at 532, 290 S.E.2d at 867 (quoting Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981)).

The defendant gave inconsistent stories to the detective and in his testimony. When the trial court found the statements false, it could infer they were indicative of guilt. Rollston v. Commonwealth, 11 Va. App. 535, 399 S.E.2d 823 (1991). "Rollston's multiple inconsistent stories to Lisa Morey and the police are further evidence of his guilt. A defendant's false statements are probative to show he is trying to conceal his guilt, and thus are evidence of his guilt." Id. at 548, 399 S.E.2d at 831.

> The inference of guilty knowledge arising from an accused's possession of recently stolen property may be repelled by a credible explanation, but the trier of fact is under no obligation to accept an account it finds unworthy of belief. In cases of this kind, when a defendant's "hypothesis of innocence" is rejected as unreasonable, evidence of his possession of recently stolen goods is sufficient to support a conviction. Further, a fact-finder, having rejected a defendant's attempted explanation as untrue, may draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt. A false or evasive account is a

> circumstance, similar to flight from a crime scene, that a
> fact-finder may properly consider as evidence of guilty knowledge.

Covil v. Commonwealth, 268 Va. 692, 695-96, 604 S.E.2d 79, 82 (2004) (citations omitted).

"'Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence.'" Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (quoting Wright v. Commonwealth, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993)). "[I]t was for the [fact finder] to decide whether the defendant acted with criminal intent in the commission of the crimes." Griggs v. Commonwealth, 220 Va. 46, 51, 255 S.E.2d 475, 478 (1979). "The issue upon appellate review is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original); Jones v. Commonwealth, 277 Va. 171, 182-83, 670 S.E.2d 727, 734 (2009).

In this case at the conclusion of the evidence, the trial judge reviewed the testimony of the evidence and determined that the defendant and his witnesses were lying and there was sufficient evidence proving the defendant intended to defraud the Game Stop shop. The trial court could properly infer the defendant knew that the Wii was stolen. It defies reason to believe the defendant, an adult, would escort his two brothers, aged 13 and 12, to a pawnshop, knowing they had a valuable electronic game, without inquiring or knowing how they obtained it. A rational trier of fact could determine that the defendant intended to defraud from the evidence presented at this trial. Accordingly, we affirm.

Affirmed.

Beales, J., dissenting.

After considerable thought, I find that I must respectfully dissent.

## I. Standard of Review

It is well established that, as an appellate court reviewing the sufficiency of the evidence on appeal, this Court "let[s] the decision stand unless we conclude no rational [factfinder] could have reached" the decision made by the factfinder. Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (en banc), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). An appellate court "will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224 (2007).

## II. Trial Court's Assessment of the Commonwealth's Evidence

The issue in this case is whether the evidence was sufficient to prove that appellant had the intent to defraud when the stolen video game items were exchanged for different items, proving the required intent element for obtaining money or property by false pretenses pursuant to Code § 18.2-178. "Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." Viney v. Commonwealth, 269 Va. 296, 301, 609 S.E.2d 26, 29 (2005).

In its thoughtful and forthright explanation regarding its weighing of the evidence, the trial court specifically stated that the evidence presented in the Commonwealth's case-in-chief had not proven appellant's guilt beyond a reasonable doubt, based on the facts and circumstantial evidence surrounding the incident. The court explained, "I don't know from a reasonable doubt standard, at the end of all the evidence, if I could say there was no reasonable hypothesis of

innocence" at the conclusion of the Commonwealth's case.[1]  The trial court's assessment of the

Commonwealth's evidence was a factual finding, it was not plainly wrong, and it is, therefore,

binding on this Court's review of the sufficiency of the evidence on appeal.

---

[1] The Commonwealth presented testimony from the manager of The Game Stop, a store that sells new and used video games.  The Game Stop's manager, who watched but did not participate in the transaction, testified that appellant carried something into the store, but that the two younger boys carried most of the items.  (The sales clerk who conducted the transaction, testifying for the Commonwealth, stated that the two young boys – the 12 year old and the 13 year old – carried the games into the store and that appellant carried nothing.)  However, the manager testified that "[t]he two younger individuals set all the stuff they wanted to trade onto the counter and asked to trade it in for a Wii system at first, and we were sold out so they elected to get an X box 360 instead."  In addition, The Game Stop's sales clerk testified that the "children were doing the transaction at the counter."  Appellant was not involved in the transaction at this point.

The manager then described how appellant became the person who signed the receipt:

> we have to have a state or government picture ID, and we requested a picture ID from someone 18 years or older than 18 because they have to take responsibility.  We are not allowed to take stuff in for minors, and [appellant] presented his ID, and we entered in all of the information into the computer which is then written down on a piece of paper and transmitted to a detective's home.  After we did that, we asked for his signature at the bottom of this receipt which we retained for our records.

The manager added that appellant was not at the counter "during the transaction," but "came back up" "when we required the ID."  The sales clerk testified that she told the children that they "needed somebody over 18," so the boys got appellant from another place in the store and brought him to the counter.

At the conclusion of the transaction, according to the manager, the items that the young boys wanted to purchase cost more than the amount of credit they received for the items they were trading, so they had to pay the store the extra amount.  There was never any testimony that appellant received a game or cash from the store, or that he paid any money to the store.

The Commonwealth also presented testimony from a detective who talked to appellant four days after the transaction at The Game Stop.  He testified that appellant's "initial response was no," when he was asked if he ever sold a Wii system.  After the detective said that he was checking with "certain pawn shops" about Wii systems, appellant asked some other people to come into the room, including one of his younger brothers.  In response to the Commonwealth's question about whether appellant then "admitted that he sold a system for them," the detective answered, "yes."  The detective then explained that appellant said, "'Man, I don't even know what I sold.  I didn't sell anything'" and "'Man, I didn't see what they sold.  I didn't know what was in there' referring to a backpack."  Appellant told the detective that he was looking at games during his brothers' transaction and claimed that he did not read the receipt before signing it, so he did not see that it said he was stating that he was the "sole owner" of the items.

Given this evidentiary finding by the trial court, we must start our analysis of this case by accepting this finding by the trial court and looking to appellant's evidence to determine if it provided sufficient proof, when added to the evidence presented by the Commonwealth, to find appellant guilty beyond a reasonable doubt. I would find that, given the trial court's rulings on the evidence and credibility of the witnesses in this case, the evidence *in toto* was not sufficient as a matter of law to prove appellant guilty beyond a reasonable doubt.

### III. Appellant's Testimony

Appellant took the stand in this case, and the trial court found that his testimony was not credible. Generally, a defendant's testimony can be used as affirmative evidence of his guilt if the factfinder concludes that he is not telling the truth. Phan v. Commonwealth, 258 Va. 506, 511, 521 S.E.2d 282, 284 (1999); Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991). However, in this case, the trial court's specific reason for concluding that appellant's testimony was not credible is not supported by the evidence in this record. In fact, according to the transcript of the trial, appellant appears to have testified the opposite on this point of how the trial court thought that he testified at trial.

At the conclusion of appellant's testimony, the trial court asked him if he was "familiar with the games, the Wii and everything else." Appellant replied that he was familiar, saying, "Yes." Despite this answer, at the conclusion of the trial, the court then found it "incredible [that appellant] would not know," as other people his age do, "the difference between Wii and everything else." The trial court apparently did not believe appellant's testimony generally – at least in part because it believed that appellant had denied any knowledge of computer gaming

---

Considering all of the evidence presented during the Commonwealth's case-in-chief, the trial court found that this evidence was insufficient to prove appellant's guilt beyond a reasonable doubt. The trial court's finding here was certainly reasonable and is entitled to deference on appellate review.

systems – a belief that is not supported by the transcript and evidence in this record which proves that appellant admitted he was familiar with these systems. See Robinson, 273 Va. at 39, 639 S.E.2d at 224.

Therefore, I must conclude that the evidence presented at trial did not support the trial court's particular rationale for finding appellant's testimony unbelievable. In short, the trial court's finding that appellant was lying about his knowledge of a Wii and other game systems was not supported by appellant's actual testimony. To the contrary, the record shows that he admitted that he *was* familiar with a Wii and such game systems. Thus, the trial court appears to have confused appellant's testimony and based its credibility determination on an answer that appellant actually did not give.[2]

As the trial court's stated reason for disbelieving appellant's testimony was unsupported by the record in this case, the trial court's finding that appellant's testimony was incredible cannot augment the Commonwealth's evidence – which the trial court had already found was insufficient on its own – to support appellant's guilt beyond a reasonable doubt.

IV. Testimony of Appellant's Young Brothers

Appellant's young brothers also testified as part of the defense case. Finding their testimony was not credible, the trial court ruled, "I'm the trier of fact, and I state for the record that I don't believe the testimony of the witnesses, and because of that, *that is enough now* for me to be convinced beyond a reasonable doubt that you are guilty and I so find." (Emphasis

---

[2] In addition, appellant's testimony was essentially consistent with the material facts presented in the Commonwealth's witnesses' testimony. See Riegert v. Commonwealth, 218 Va. 511, 519, 237 S.E.2d 803, 808 (1977) (finding in a circumstantial evidence case that the Commonwealth's evidence "established facts which were consistent with defendant's innocence" and overturning his larceny by false pretenses conviction in a case where the defendant testified). All of the witnesses agreed that appellant was not involved in the transaction at The Game Stop other than in signing the receipt presented to him after they sought him out to sign because someone 18 or older was required to sign the receipt.

added).  I would find that the trial court erred as a matter of law when it concluded that the young brothers' testimony could provide a sufficient basis of affirmative evidence to bolster the Commonwealth's evidence – which the trial court had found was lacking – enough to prove appellant's guilt beyond a reasonable doubt.

The United States Supreme Court long ago ruled that perjured testimony, if "knowingly and purposely invoked" by a defendant, might be used by the factfinder as evidence of that defendant's guilt.  Allen v. United States, 164 U.S. 492, 500 (1896).  To that end, if the evidence had established that appellant *himself* attempted to influence his brothers to lie on the stand, then the trial court could have used the brothers' dishonest testimony as affirmative evidence of appellant's guilt.  See Wilson v. United States, 162 U.S. 613, 621 (1896).  However, here, the trial court made no such factual finding, and such a basis certainly could not be gleaned from the record before this Court on appeal.  There is no evidence in this record that appellant coerced his brothers to lie for him.  At most, as the trial court found, "[T]hey love their brother and they want[ed] to help him out."  The United States Supreme Court has stated, "When the testimony of a witness is not believed, the trier of fact may simply disregard it.  Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion."  Bose Corp. v. Consumers Union, 466 U.S. 485, 512 (1984).

## V.  Effect of Findings of the Trial Court

Based on the great weight that the trial court gave to the lack of credibility of the 12-year-old brother's testimony and the 13-year-old brother's testimony and the court's basis for determining that appellant's testimony was not credible, I would find that the trial court, while making a number of very thoughtful observations about the evidence in this case, nonetheless ultimately erred as a matter of law in its ruling.  In this case, the trial court misapplied the law regarding use of the young brothers' testimony regarding appellant and also apparently confused

or misunderstood appellant's testimony on a point that the trial court clearly found important when finding appellant unbelievable.

Given the specific findings of the trial court, including the finding that the Commonwealth's evidence by itself did not prove the case against appellant beyond a reasonable doubt, the evidence here does not exclude the reasonable possibility that appellant did not intend to defraud the store. Appellant's signing of the receipt could well have been "consistent with an honest purpose" – to allow his brothers to exchange game items that appellant believed were theirs for new items. Brockenbrough's Ex'x v. Brockenbrough's Adm'r, 72 Va. (31 Gratt.) 580, 591 (1879); see Riegert v. Commonwealth, 218 Va. 511, 518-20, 237 S.E.2d 803, 808-09 (1977) (finding that the Commonwealth's evidence did not prove beyond a reasonable doubt that Riegert had the intent to defraud and, therefore, overturning his conviction).

## VI. Conclusion

In short, while this Court cannot overturn the trial court's finding of guilt unless no reasonable factfinder could have found appellant guilty beyond a reasonable doubt, it is clear that, based on its statements, the trial court *itself* did not regard the Commonwealth's evidence as sufficient to find appellant guilty beyond a reasonable doubt here. Moreover, while a trial court should, of course, consider the totality of the evidence in rendering a decision, see Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948), none of the defense evidence referenced by the trial court in its decision could have provided an adequate basis for finding that the evidence of appellant's guilt was sufficient beyond a reasonable doubt. Accordingly, for the foregoing reasons, I must respectfully dissent in this case.