# Richmond

### FRED M. SPANGLER V. COMMONWEALTH OF VIRGINIA.

November 22, 1948.

Record No. 3414.

Present, All the Justices.

*Stuart Carter, George B. Dillard* and *T. W. Messick*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Henry T. Wickham, Special Assistant to the Attorney General,* for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

Fred M. Spangler pleaded not guilty to an indictment charging him with seducing a young woman twenty-one years of age. He, "with the consent and concurrence of the Commonwealth's Attorney, and of the court, entered of record," was tried by the court without a jury, found guilty, and sentenced to confinement in the penitentiary for two years.

Spangler assigns two errors: (1) the refusal of the court, on the conclusion of the introduction of the evidence for the Commonwealth, to sustain his motion to strike; and (2) the refusal of the court, after the introduction of all the evidence, to find him not guilty.

When a defendant in a civil or criminal case proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's evidence in chief, he waives his right to stand upon such motion. Plaintiff's case may be strengthened by defendant's evidence. If thereafter a motion is made to strike the evidence or to set aside the verdict, the court must consider the entire record in reaching its conclusion. *Rawle* v. *McIlhenny*, 163 Va. 735, 177 S. E. 214, 98 A. L. R. 930; *Angell* v. *McDaniel*, 165 Va. 1, 181 S. E. 370; *Anderson* v. *Clinchfield Ry. Co.*, 171 Va. 87, 198 S. E. 478; *State* v. *Zitzelsberger* (W. Va.), 39 S. E. (2d) 835; 5 Wigmore on Evidence, Second Edition, sec. 2496; Burks' Pleading & Practice, 3rd Ed., sec. 256.

Therefore, the only question for our consideration is whether considering all the evidence, the guilt of the accused is established beyond a reasonable doubt.

The prosecutrix lived near Clifton Forge and the accused lived in Roanoke. Some time in April or May, 1945, they met informally in Roanoke, where the prosecutrix was taking a business course and the accused was at home on a furlough. They had several "dates" before the accused returned to his post at Fort Knox, Kentucky. The prosecutrix did not complete her business course and returned to her home. While the accused was at Fort Knox and before he was discharged from the army in July, 1945, he wrote the prosecutrix twelve letters which were introduced in evidence. In these letters he used many endearing terms, told her that he loved her, was anxious to see her and she was the "only girl" for him etc. Marriage was not discussed or mentioned. During this period neither the prosecutrix nor the accused considered they were engaged. Each continued to "date" other boys and girls.

From July, 1945, to April, 1946, the accused made several trips from Roanoke to Clifton Forge to see the prosecutrix. From April to the latter part of May, 1946, he visited her once a week, or sometimes once in two weeks. The pros-

ecutrix stated that after April 25, 1946, she did not make dates with other young men.

It is well established that to warrant a conviction under Code section 4410, three essential elements must be established: (1) a promise of marriage, conditional or unconditional; (2) the seduction of an unmarried female; and (3) illicit connection with such female. The previous chaste character of the female is presumed in the absence of evidence to the contrary.

The evidence tending to show that the accused promised to marry the prosecutrix is vague, indefinite and uncertain. The testimony of the prosecutrix on the question of a promise of marriage is as follows:

"Q. Then when do you claim he talked to you about marriage?

"A. When he came back over.

"Q. Was that in May?

"A. No, in April, 1946.

"Q. Do you remember what day that was?

"A. Around the latter part of April.

"Q. The twenty-fifth of April is the latter part of April, was it the twenty-fifth?

"A. Yes, some. We talked about it some that night.

"Q. What did you say about it on that date?

"A. I don't just exactly remember.

"Q. You don't remember. All right then, what other time did you have discussions about it?

"A. Around the first of May.

"Q. What was said at that time, around the first of May?

"A. He asked me if I would like to be married.

"Q. He asked you if you would like to be married. What did you allow him?

"A. I didn't make any definite answer.

"Q. Was that the only time you discussed it?

"A. Yes.

"Q. Those were the only two times you discussed being married?

"A. Yes."

Neither party seemed to have regarded the letters seriously. The accused testified that he was lonesome in the military barracks, homesick, and wrote to this young lady as he did to several others. The prosecutrix did not regard the accused as her "regular fellow" during this period. She said he did not start coming to see her regularly before April 25, 1946. Her exact language is "we did not go together before that time." After that date, according to her testimony, marriage was mentioned twice, one time he asked her if she would like to be married. She did not remember her reply and did not make any definite answer. This does not establish a promise of marriage, nor can a promise be inferred.

■ Code, section 4413, provides that no conviction shall be had on the testimony of the female seduced unsupported by other evidence. The promise of marriage is one essential element of the crime. It not only must be proven but the testimony of the prosecutrix must be corroborated by other evidence which does not emanate from her.

The promise of marriage is not an agreement usually made in public. Nor is it a contract made with the knowledge of third parties. Such promise is usually established by one of the contracting parties, supported by circumstantial evidence, such as regular visits made by the accused, gifts, their attitude toward each other, visiting places together, and other matters of like nature. However, if the promise of marriage does not appear from the testimony of the prosecutrix there is nothing to corroborate.

The burden was upon the Commonwealth to prove the promise beyond a reasonable doubt, and the evidence is not sufficient to establish a promise of marriage which would support a civil action for breach thereof.

■ The second element of the offence is seduction of the female. Seduction is enticing the woman to have sexual intercourse with the accused by means of persuasion, solicitation, promises, bribes or other means without employment of force. The specific charge in this case is seduction under a promise of marriage. Hence the dominating force which

influences the female to yield her person must be the promise to marry her. This does not appear to be a fact in this case.

The prosecutrix testified that on May 19, 1946, four parties were riding in an automobile en route from Roanoke to Clifton Forge. Fuller Wilson and her sister were on the front seat and she and the accused were riding on the back seat. Her story of the manner in which she was seduced is as follows:

"A. * * * It happened in the back seat of the car. We were driving along at the time.

"Q. Just tell him exactly how it happened. How you came to it?

"A. I was nervous and weak and run down. My health just permitted me to have this intercourse.

"Q. What do you mean your health just permitted you?

"A. I was worried, weak and run down and couldn't be helped.

"Q. Couldn't be helped?

"A. No.

"Q. Did you ever have intercourse with anyone before?

"A. No indeed.

"Q. I want you to explain to Judge Abbott just before you had intercourse, what you did, what Fred did, what he said to you and what you said to him, everything that led up to it?

"A. He was kissing me and loving me up as couples would do, and talking to me. I don't remember what he did say, I couldn't resist it and neither could he. It was due to my health that I gave in.

"Q. At that time were you planning to be married?

"A. Yes.

"Q. If you had not been planning to get married would you have given in to him?

"A. I don't believe so.

"Q. I just want to get at what actually is a fact here

now. If you gave in to him on account of your health or just on account of the fact you were planning to be married?

"A. I gave in to him because we were planning to be married but my health permitted me to do so. It couldn't be helped."

Even after she ascertained that she was pregnant she told the doctor who examined her that she had never had intercourse with anybody, and on being asked about this she said she told him that "Because I didn't believe I did it. It wasn't directly. I didn't have a direct intercourse."

Prosecutrix did state that she yielded her person to the accused because they were planning to get married. The only evidence in the record tending to show that the parties were "planning" to be married is that quoted above. Nobody was told of their intentions and there is nothing in the record tending to connect the accused with any such plans.

She also said she yielded to him because of her health, and again because she could not help it, and finally she claims that she did not have direct intercourse. The birth of a child establishes the fact that there was intercourse, but the different and confusing statements as to the inducing cause leave a decided doubt in mind as to whether or not it was due to a promise of marriage.

The time, the place and the circumstances existing when the prosecutrix claimed that the accused had intercourse with her are, to say the least, unusual. The back seat of an automobile being driven along the highway with a sister of the prosecutrix and her beau on the front seat is a queer and absurd place in which to seduce a woman. Such an act may be possible but it is certainly improbable in view of the fact that the sister and the driver of the car stated that they did not observe any unusual conduct on the part of the prosecutrix and the accused, and that they did not know or even suspect that any thing unseemly had taken place on the back seat.

The evidence tending to prove the promise of marriage and the reliance thereon by the prosecutrix is too

vague, indefinite and uncertain to sustain a conviction in this case.

The judgment of the trial court is reversed and the prosecution dismissed.

*Reversed and dismissed.*