UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Russell and AtLee
Argued at Richmond, Virginia


PATRICIA ANN GERALD

                                                    MEMORANDUM OPINION* BY
v.       Record No. 1931-15-2                       CHIEF JUDGE GLEN A. HUFF
                                                        DECEMBER 27, 2016
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                           Cheryl V. Higgins, Judge

              Michael J. Hallahan, II, for appellant.

              Christopher P. Schandevel, Assistant Attorney General (Mark R.
              Herring, Attorney General, on brief), for appellee.


       Patricia Ann Gerald ("appellant") appeals her conviction of perjury, in violation of Code

§ 18.2-434.  After being convicted of driving on a suspended license, third offense, in the

Albemarle County General District Court, a grand jury indicted appellant for perjury.  Appellant

appealed the driving on a suspended license conviction to the Albemarle County Circuit Court

("trial court"), which, following a bench trial on both charges, convicted appellant for driving on

a suspended license, third offense, and for committing perjury in the general district court.  The

trial court sentenced appellant to an active sentence of three months' imprisonment for the

perjury conviction and ten days' imprisonment on the driving on a suspended license conviction.

On appeal, appellant challenges the sufficiency of the evidence for the perjury conviction and

contends that the trial court was an improper venue for the perjury trial.  For the following

reasons, this Court affirms the conviction.

       _____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

Between 3:00 and 4:00 p.m. on May 26, 2013, a Mercedes rear-ended a Toyota Matrix driven by Paul Welch ("Welch") while he waited for a traffic signal on Ivy Road in Albemarle County. Welch "immediately" opened his door to exit his car and saw in his mirror the Mercedes's driver stepping out of the driver's side. Welch identified the driver as appellant. Welch walked to the passenger side of the Mercedes, and Tarsha Gerald ("Tarsha")—appellant's daughter—stepped out of the front passenger side of the vehicle. The only other person Welch observed in the Mercedes was a woman in the backseat who did not leave the car. Tarsha identified herself as the car's owner and gave Welch a piece of paper with her contact information, insurance company, and license plate number. Tarsha had only a state-issued identification card and did not show Welch a driver's license.

Welch then asked to see the license belonging to the car's driver, appellant. At that point, the two women switched sides—Tarsha "ran around to the driver's side, hopped in the car, and [appellant] got in the passenger seat, and they sped off." Welch followed the Mercedes long enough to confirm that the license plate number appellant gave him was accurate and then called police.

Albemarle County Police Officer Ralph Scopelliti ("Scopelliti") responded to the scene and, based on his conversation with Welch, radioed information about the incident to dispatch. Officer Carl Scott Miller ("Miller") heard Scopelliti's call and then traveled to an address

associated with the Mercedes provided by dispatch. On arrival, he located the car, appellant, and Tarsha. Appellant identified herself to Miller as the vehicle's owner, asked him if "this was about the crash," and admitted that "she had been driving." After Miller asked for appellant's driver's license, appellant showed him a state identification card and acknowledged that her license was suspended. Miller later confirmed that both Tarsha and appellant had suspended licenses.

During the investigation, Scopelliti called a phone number Miller provided him in order to follow up with the two women. Scopelliti identified himself, and then confirmed that he was speaking with Tarsha. After asking Tarsha several questions, Scopelliti asked to speak with appellant, who then came on the line and identified herself as appellant. In response to Scopelliti's asking "if she was in an accident," appellant responded "yes." Scopelliti then asked appellant "if she drove before and after the accident," and she responded "yes." Finally, Scopelliti asked appellant whether she had a driver's license, and she replied that she did.

Based on the investigation, both appellant and Tarsha were charged with driving on a suspended license in violation of Code § 46.2-301. The joint trial of appellant and Tarsha as codefendants took place in Albemarle County General District Court on October 8, 2013. The general district court judge administered oaths to appellant, Tarsha, and the Commonwealth's witnesses before the trial began. Both appellant and Tarsha testified in their own defense.

Because there was no record of the general district court proceedings, during the later circuit court proceedings the Commonwealth relied on Scopelliti's testimony to establish the events of the general district court trial. His testimony established that, on direct examination, both appellant and Tarsha denied driving. During the general district court trial, the Commonwealth's attorney had read from Miller's investigation notes, which contained the questions he asked appellant and Tarsha during the investigation, in order to ask the

- 3 -

codefendants those same questions on cross-examination. Scopelliti had an identical copy of Miller's notes on which he had recorded what questions the Commonwealth's attorney had asked appellant.

Specifically, the Commonwealth's attorney had first asked appellant "if she had spoken to Officer Miller." Appellant's "answer was no." The Commonwealth's attorney then had "asked if Officer Miller asked her about her driver's license and if she had told him that she did not have one because she had to pay reinstatement fees,[1] and the answer was no, she didn't make any of those statements." Finally, the Commonwealth's attorney had asked appellant "if the officer asked if her name was Patricia Gerald and that she had been driving the car that day, and the answer was no." After cross-examining both appellant and Tarsha, the Commonwealth had asked the codefendants if they understood they were under oath, and both independently answered that they understood they were under oath and they had told the truth on cross-examination.

The general district court found both appellant and Tarsha guilty of driving on suspended licenses, and both appealed their convictions to the circuit court where they were tried jointly for the original driving on a suspended license charges as well as for committing perjury during the general district court trial.

Following the close of the Commonwealth's evidence during the circuit court trial, which included the testimony of Welch, Miller, and Scopelliti, Tarsha testified in her own defense. According to Tarsha, she, appellant, appellant's boyfriend Aaron Alexander, Tarsha's two children, and a woman named Bianca "Tiffany" Horne ("Horne") drove to Waynesboro in the Mercedes on May 26, 2013 to buy groceries. Tarsha testified that Horne drove to and from

---

[1] Previously, Miller testified that "In my twenty . . . years of law enforcement, the only reason why somebody pays reinstatement fees is because they're suspended."

Waynesboro, and was driving when the Mercedes struck Welch's Toyota. She further testified that after she gave Welch her contact and insurance information, Welch told her she could leave so Horne drove them back to appellant's apartment. Tarsha testified that she remembered speaking with Miller at her apartment and that when he asked her for her driver's license, she gave him her state identification. She denied ever speaking to Scopelliti and further denied giving false testimony about the matter in the general district court trial.

Called as a defense witness on December 1, 2014, Horne testified that she had known Tarsha for "five months . . . or a year." When counsel for Tarsha asked Horne to clarify how she knew Tarsha on May 26, 2013 when she had just testified that she had known appellant for only a year, Horne replied: "I—I met her in Waynesboro." She further testified that when she was driving back from Waynesboro, only Tarsha was in the car with her. When asked whether she was present when an automobile accident occurred on May 26, 2013, Horne replied: "I was a licensed driver coming back from Waynesboro back to Charlottesville, and I plead the Fifth." The defense also called Aaron Alexander, who testified that he was in pain due to back problems and noted that he was asleep in the backseat during the incident. He identified Horne as the driver after initially referring to her as "whatyoucallum," and testified that he did not know Horne's last name. Although called to the stand, appellant invoked her Fifth Amendment right against self-incrimination and refused to testify.

During the trial, appellant's counsel objected to venue on the basis that the Albemarle County General District Court is located in the City of Charlottesville, not Albemarle County, and thus the trial court was an improper venue for appellant's perjury trial. The trial court determined that the parties would "finish the case except for the issue with regards to venue," which it granted the parties leave to brief. Appellant moved to strike at the close of the Commonwealth's evidence and renewed that motion at the close of all evidence. Appellant

contended that the Commonwealth failed to present sufficient evidence to establish that the allegedly perjurious testimony concerned a material issue, that the evidence did not sufficiently corroborate the falsity of appellant's statement, and that Welch's testimony was insufficient because he was interested in the prosecution. The Court denied the motions to strike and continued the case for closing argument following receipt of the venue briefs.

The trial reconvened for closing arguments on February 24, 2015 after the parties filed their venue briefs. Appellant argued that, under the City of Charlottesville's charter, property owned by Albemarle County within the City of Charlottesville is subject to the "joint jurisdiction" of the city and county.[2] Appellant distinguished "concurrent jurisdiction" from "joint jurisdiction," which appellant argued would require city and county officers to act in concert to conduct a prosecution, and concluded that under the charter Albemarle County could not "act unilaterally to do a criminal prosecution" for crimes committed in the county courthouse. The trial court ruled that, although the courthouse is within the City of Charlottesville, the phrase "joint jurisdiction" implied that "the jurisdiction is shared, and it doesn't mean that they have to act together."

Ultimately, the trial court concluded that the Commonwealth proved venue was proper, then went on to convict appellant of driving on a suspended license and committing perjury in the general district court. The trial court noted that it gave Welch's testimony "great weight" in light of his testimony's detail and the lack of anything "in cross-examination that really attacked or took away from [his] credibility." The trial court noted appellant's statements to Miller were corroborated by the testimony of Welch and Scopelliti, and it additionally observed that

---

[2] Throughout the trial of appellant and Tarsha, appellant's counsel frequently adopted Tarsha's counsel's arguments as his own. Such was the case specifically with respect to the venue argument.

"whether or not one is driving at the time of an accident seems to be a singular significant event."  The trial court declined to find the defense witnesses' accounts credible, finding that "there are too many discrepancies in the testimony between [appellant] and the other witnesses."

Appellant subsequently filed motions to reconsider the venue and sufficiency issues, which the trial court denied.  This appeal followed.

## II.  STANDARD OF REVIEW

Our standard for reviewing the sufficiency of the evidence is firmly established:

> [W]hen the sufficiency of the evidence is challenged on appeal, the evidence and all reasonable inferences fairly drawn therefrom must be viewed in the light most favorable to the Commonwealth.  The trial court's judgment should be affirmed unless it appears that it is plainly wrong or without evidence to support it.

Spencer v. Commonwealth, 238 Va. 275, 283, 384 S.E.2d 775, 779 (1989) (citations omitted). Under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id. Thus, this standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.

"In its review, this Court will give deference to the trial court's findings of fact, but review the trial court's 'statutory interpretations and legal conclusions *de novo*.'"  Wallace v. Commonwealth, 65 Va. App. 80, 88, 774 S.E.2d 482, 486 (2015) (quoting Brown v. Commonwealth, 57 Va. App. 381, 390, 702 S.E.2d 582, 586 (2010)).

III.  ANALYSIS

Appellant raises two assignments of error in this appeal:

1.  The appellant states and assigns error to the trial court for finding that the evidence was sufficient to find the appellant guilty of perjury in violation of Virginia Code Section 18.2-434 . . . because the Commonwealth's evidence didn't exclude all reasonable hypothesis of innocence and did not rise to the level to prove that the appellant was guilty beyond a reasonable doubt because the trial court was plainly wrong as to the interpretation of the evidence, as there was no credible evidence, even granting the Commonwealth all reasonable inferences, to support the appellant's guilt beyond a reasonable doubt.

2.  The appellant states and assigns error to the trial court for finding that Albemarle County was the proper venue for an offense committed in the Albemarle County General District Court.

A.  Perjury

Appellant first contends that the trial court erred in finding the evidence was sufficient to convict her of perjury in violation of Code § 18.2-434.  Specifically, appellant argues that because the Commonwealth did not prove what questions were asked to appellant that elicited allegedly perjurious responses, the evidence did not rise to the high quantum of proof necessary to sustain a perjury conviction.  Appellant's argument is without merit.

"The common law crime of perjury is codified at Code § 18.2-434."  Williams v. Commonwealth, 8 Va. App. 336, 339, 381 S.E.2d 361, 363 (1989).  Code § 18.2-434 provides in pertinent part:  "If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . he is guilty of perjury, punishable as a Class 5 felony."  "[I]n order to sustain a perjury conviction under this statute, the Commonwealth [bears] the burden of proving: (1) that an oath was lawfully administered; (2) that the defendant wilfully swore falsely; and (3) that the facts to which he

- 8 -

falsely swore were material to a proper matter of inquiry." Mendez v. Commonwealth, 220 Va. 97, 102, 255 S.E.2d 533, 535 (1979). To be material, the testimony at issue "must have been relevant in the trial of the case, either to the main issue or some collateral issue." Holz v. Commonwealth, 220 Va. 876, 881, 263 S.E.2d 426, 429 (1980). Additionally, sustaining "a perjury conviction under Code § 18.2-434 requires proof of falsity from the testimony of at least two witnesses or other corroborating evidence of falsity in the event the case is supported by the testimony of only one witness." Keffer v. Commonwealth, 12 Va. App. 545, 549, 404 S.E.2d 745, 747 (1991).

The allegedly perjurious statement at issue is appellant's denial before the general district court that she was driving on the date in question. Appellant does not contest that she was under oath when she testified at the general district court trial, a fact apparent from the record. Appellant further concedes that the issue of whether she was driving was material in a prosecution for driving on a suspended license. Finally, the Commonwealth satisfied its burden of establishing the falsity of the statement through sufficient corroborating evidence.

Welch's testimony established that appellant was driving at the time of the accident; however, because a perjury conviction "requires proof of falsity from the testimony of at least two witnesses or other corroborating evidence of falsity," id., the Commonwealth was required to produce an additional witness or other corroborating evidence to sustain its burden. It did so here through the introduction of appellant's out of court confessions on two occasions to different officers who she knew were investigating the accident.

Miller testified that after asking who had been driving the vehicle, appellant "stated it was her vehicle, that she had been driving." Additionally, Scopelliti testified that appellant replied "yes" after he asked her "if she drove before and after the accident." Although she was not under oath when she spoke to the two officers, the fact that, knowing her privilege to drive

had been suspended, she confirmed for investigating officers that she had in fact driven sufficiently corroborates Welch's testimony for a conviction under Code § 18.2-434. The trial court's conclusion draws further support from its evaluation of the evidence presented by appellant. "When a defendant in a . . . criminal case proceeds to introduce evidence in his own behalf," the Commonwealth's "case may be strengthened by [the] defendant's evidence." Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948). Here, although appellant did not testify in her own defense, the testimony of the other defense witnesses was often contradictory and doubtful. The trial court specifically noted in its ruling that it found "there are too many discrepancies in the testimony." Each element of perjury was thus amply established by the evidence.

Nonetheless, appellant contends that the perjury conviction cannot stand because the Commonwealth did not prove the exact questions asked of appellant during the general district court trial because Scopelliti conceded that he could not recall, "word for word," what the questions were. Even if such proof were required under Virginia law, the evidence viewed in the light most favorable to the Commonwealth demonstrates that the Commonwealth adequately established the questions that elicited appellant's perjurious answers.

Scopelliti testified that he took "very specific notes" of the questions the Commonwealth asked appellant during the October 8, 2013 general district court trial, saying that he was "keeping track of what was asked and what was answered." Specifically, Scopelliti testified that "[a]s the Commonwealth asked questions, she was reading from Officer Miller's notes, and [Scopelliti] had the same notes as Officer Miller," on which he underlined the exact questions as the Commonwealth's attorney asked them. To clarify the process, counsel for appellant asked Scopelliti: "So what you were doing is you were recording the questions asked?," to which Scopelliti replied, "On the piece of paper, yes." Further, as recorded above, Scopelliti articulated

the questions asked during the general district court trial with a great degree of specificity during his circuit court testimony.

Appellant further argues that because Scopelliti's recitation of the questions did not expressly mention such details as the date of the incident or where the incident occurred, the evidence was insufficient to convict appellant of perjury because she could have been truthfully denying driving at another time or in another place. The questions eliciting appellant's perjurious responses took place during a general district court trial involving the May 26, 2013 Albemarle County car accident, and therefore all questions asked contemplated the events of that day. "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). To the extent that appellant argues her denial of driving was truthful in that she was referring to another date or location, the trial court properly rejected that hypothesis of innocence because it did not "flow from the evidence," and the Commonwealth has no burden to disprove any fantastic hypothesis posited by appellant. Hamilton, 16 Va. App. at 755, 433 S.E.2d at 29.

Accordingly, the trial court's decision to convict appellant of perjury was not plainly wrong and was supported by competent evidence.

## B.  Venue

In her second assignment of error, appellant contends that the trial court erred in concluding that Albemarle County was a proper venue for trial of an offense committed in the Albemarle County General District Court. Specifically, appellant argues that because the Albemarle County General District Court is located in the Albemarle County Courthouse, which is situated within the City of Charlottesville, the trial court was an improper venue for appellant's perjury trial. This Court disagrees.

- 11 -

Code § 19.2-244, the statute governing venue in criminal prosecutions, states in part: "*Except as otherwise provided by law*, the prosecution of a criminal case shall be had in the county or city in which the offense was committed." (Emphasis added). The Commonwealth bears the burden of proving venue by direct or circumstantial evidence, and a "criminal charge cannot be sustained unless the evidence furnishes the foundation for a 'strong presumption' that the offense was committed within the jurisdiction of the court." Keesee v. Commonwealth, 216 Va. 174, 175, 217 S.E.2d 808, 809-10 (1975) (quoting Harding v. Commonwealth, 132 Va. 543, 548, 110 S.E. 376, 378 (1922)).

Neither party disputes that appellant's perjury took place within the Albemarle County Courthouse or that the Albemarle County Courthouse is located within the bounds of the City of Charlottesville. Without more, these facts would indicate that the Circuit Court of the City of Charlottesville is the proper venue for the perjury prosecution under Code § 19.2-244. That statute, however, contains an important proviso—"[e]xcept as otherwise provided by law." Here, the charter of the City of Charlottesville, as amended, contains additional provisions affecting venue, and it is the proper interpretation of these provisions that determines this issue.

In 1888, the General Assembly enacted a statute rechartering the Town of Charlottesville as a city. 1888 Va. Acts 411-417. The statute did not purport to include language carving out the Albemarle County Courthouse and its lands to remain part of Albemarle County, thus drawing into question whether the courthouse was subject to county or city jurisdiction. 1888 Va. Acts 411-417. Perhaps recognizing this ambiguity, the General Assembly included language stating: "The property now belonging to the county of Albemarle within the limits of the city of Charlottesville, shall be subject to the joint jurisdiction of the county and city authorities, and shall not be subject to taxation by the authorities of either county or city." 1888 Va. Acts 415. The following section of the statute clarified that "the courthouse and jail and their respective

- 12 -

lots and other buildings thereon" were among the "property" subject to joint jurisdiction. 1888 Va. Acts 416.

This language has remained substantially similar in every subsequent version of the statute. See, e.g., 1908 Va. Acts 442, 455-56 (repealing and replacing 1900 version of act creating a new charter for the City of Charlottesville and providing that "[t]he property now belonging to the county of Albemarle within the limits of the city of Charlottesville, shall be within and subject to the joint jurisdiction of the county and city authorities and officers, and shall not be subject to taxation by the authorities of either county or city . . ."); see also 1900 Va. Acts 1142; 1946 Va. Acts 746. The present version of the City of Charlottesville charter states: "The property now belonging to the County of Albemarle within the limits of the City of Charlottesville shall be within and subject to the joint jurisdiction of the county and city authorities and officers, and shall not be subject to taxation by the authorities of either county or city . . . ." Charlottesville, Va. Code of Ordinances § 48 (2016). This provision remains unchanged from the language of the 1946 Act.

The issue in this assignment of error turns on the meaning of "joint jurisdiction" as used in the charter. The word "joint" when used in this context can imply united, concerted action or power to act shared concurrently. See, e.g., Joint, Black's Law Dictionary (10th ed. 2014) (defining "joint" when used "of a thing" as "common to or shared by two or more persons or entities" and when used "of a person or entity" as "combined, united, or sharing with another"); Joint, Webster's Third New International Dictionary (2002) (defining "joint" as, among other things, "shared by or affecting two or more"). This Court must therefore look to the exercise of jurisdiction contemplated by the statutory language to determine whether the joint jurisdiction must be exercised by both jurisdictions simultaneously, or whether the city and county merely share joint authority to exercise jurisdiction.

Joint or concurrent jurisdiction granted to governing authorities, "to be of value to the respective [authorities] or to any one, must have a practical application." J.S. Keator Lumber Co. v. St. Croix Boom Corp., 38 N.W. 529, 543 (Wis. 1888). If the charter required the city and county to act jointly in criminal prosecutions arising in the Albemarle County Courthouse, a city and county grand jury would have to meet together and issue a joint indictment; city and county Commonwealth's attorneys would have to appear jointly and prosecute the case together; and city and county judges would have to decide jointly to convict a defendant. Such a mandate would be manifestly absurd. Because "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction," Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998), and statutes should be construed so as to avoid an absurd result, Ford Motor Co. v. Gordon, 281 Va. 543, 549-50, 708 S.E.2d 846, 850 (2011), this Court finds that the "joint jurisdiction" contemplated by the charter grants either the city or the county authority to prosecute offenses taking place within the Albemarle County Courthouse.

Notwithstanding, appellant argues that Fitch v. Commonwealth, 92 Va. 824, 14 S.E. 272 (1896), necessitates the conclusion that the trial court was an improper venue for appellant's perjury trial. In that case, the Supreme Court addressed where venue was proper when the defendant committed perjury in the Augusta County Courthouse. The courthouse was located entirely within the Staunton city limits, and thus was "within the territorial jurisdiction of [Staunton's] Hustings Court." Id. at 828, 14 S.E. at 273. Accordingly, the Supreme Court concluded that "County Court of Augusta county would have no jurisdiction of the offence, although committed in the court, for the reason that the offence took place outside of its territorial jurisdiction over crimes." Id. Although the facts in Fitch are analogous, that case is nonetheless distinguishable from the case at bar because no statutory authority or other legal provision existed at the time granting Augusta County shared jurisdiction over crimes committed

- 14 -

on county property located within Staunton city limits.  Such would be the result here but for the charter provision granting the City of Charlottesville and Albemarle County "joint jurisdiction" over county property located within city limits.  That provision coincides with the "otherwise provided by law" caveat in Code § 19.2-244 and makes the Albemarle County Circuit Court a proper venue for perjury committed inside the Albemarle County Courthouse.

Accordingly, because the General Assembly's broad grant of "joint jurisdiction" in the charter encompasses the authority exercised by the trial court here in trying appellant for perjury, this Court affirms the trial court's ruling that the Albemarle County Circuit Court was a proper venue for appellant's perjury trial.

## IV.  CONCLUSION

For the foregoing reasons, this Court affirms appellant's conviction for perjury.

<u>Affirmed.</u>