COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Alston and AtLee
Argued by teleconference

UNPUBLISHED

DANIEL RAY ESSENMACHER

v.      Record No. 0086-17-3

LYNCHBURG DEPARTMENT OF
  SOCIAL SERVICES                                    MEMORANDUM OPINION* BY
                                                     JUDGE ROSSIE D. ALSTON, JR.
DANIEL RAY ESSENMACHER                                    MARCH 6, 2018

v.      Record No. 0087-17-3

LYNCHBURG DEPARTMENT OF
  SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
R. Edwin Burnette, Jr., Judge

Christopher C. Graham (Eustis & Graham, PC, on brief), for
appellant.

Susan L. Hartman, Assistant City Attorney (Yvonne Z. Schewel,
Guardian *ad litem* for the minor children, on brief), for appellee.


Daniel Ray Essenmacher (appellant) argues that the trial court abused its discretion in

denying his motion to strike. Appellant specifically contends that the trial court erred when it

1) approved the goal of adoption in the revised foster care plan and 2) terminated his parental

rights pursuant to Code § 16.1-283(C)(2) without the requisite evidence. We disagree.

                                    BACKGROUND

Appellant and Tymatha Ayers (Ayers) share two minor children, L.R. and A. The family

initially lived in Michigan. While there, appellant and Ayers were under investigation for

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

leaving A. outside in a play pen for extended periods of time without supervision. There were also inquiries regarding L.R. being born substance-exposed to marijuana. In 2015, additional allegations of physical abuse, neglect, sexual abuse, and failure to protect the children also arose. The family moved to Virginia. On May 24, 2015, there was a domestic assault call to the family's residence. Two days later, police responded to a call regarding possible sexual abuse of A. after a neighbor, who was bathing the children, noted A.'s hypersexual behaviors. Lynchburg's Department of Social Services (LDSS) initiated an investigation. The police came to the home again on May 29, 2015. They discovered that the home was condemned; it was infested with bugs, there were exposed wires on the walls, and open air ducts on the floors. In addition, both appellant and Ayers tested positive for marijuana. Moreover, the children were caked in dirt, and bug bites from carpenter ants and bed bugs covered their bodies.

The children were taken to Lynchburg General Hospital for forensic exams. A. had a significant tear below her vaginal opening. It was concluded that it was not possible that this injury was self-inflicted. The forensic nurse identified that L.R. experienced possible sexual abuse as well. Supporting documentation indicated that appellant changed A.'s diaper in a "sexual way," would throw her on the ground, and slap her on the face, hands, and legs. An emergency removal order was executed, and the children were placed in the custody of LDSS. A. was approximately twenty months old, and L.R. was six months old at the time.

On June 15, 2015, appellant was arrested for failing to register as a sex offender; he was required to register because of his felony conviction for aggravated sexual battery of a child in Michigan. Ultimately, appellant was convicted and remained incarcerated until September 6, 2015. During this time, the adjudicatory hearing was held on July 6, 2015. The Juvenile and Domestic Relations District Court of the City of Lynchburg (J&DR court) found that the children were "abused or neglected" or at risk of such because their "parents . . . create[d] or inflict[ed],

threaten[ed] to create or inflict, or allow[ed] to be created or inflicted upon such child[ren] by other than accidental means, or create[d] a substantial risk of death, disfigurement, or impairment of bodily or mental functions." A dispositional hearing was held on August 3, 2015. The J&DR court ordered that custody of the children be transferred to LDSS, noted that continued placement at home would be contrary to the welfare of the children, and found that LDSS made reasonable efforts to prevent the removal of the children. The J&DR court approved the foster care plan which contained the following goals: "return home/relative placement." The J&DR court noted that visitation between appellant and the children would be at the discretion of LDSS and ordered appellant and Ayers to comply with the foster care plan. A review hearing was set for November 25, 2015.

Appellant and an LDSS employee met on October 26, 2015 to discuss what appellant needed to do in order for his children to be returned to his care. The recommended services included: psychological assessment, services at Horizon Behavioral Health (Horizon), weekly outpatient therapy, psychiatric services, and intensive wrap-around services. Appellant was arrested for a probation violation and was incarcerated from November 9 to December 7, 2015. The services recommended by LDSS were further frustrated as appellant was arrested again for probation violations, including violating a protective order Ayers took out against appellant, on December 18, 2015. Appellant has since been incarcerated continuously until his release in June 2016.

LDSS filed a petition for a permanency planning hearing on March 21, 2016. LDSS requested that the J&DR court terminate appellant's parental rights and approve the updated foster care plan. The updated plan reflected new goals: "adoption/relative placement." At the hearing on April 20, 2016, the J&DR court found that reasonable efforts were made to reunite the children with appellant. It noted that LDSS's permanent goals for the children are

achievable, approved the plan, and terminated appellant's parental rights and found that it was in the children's best interests. Appellant appealed both determinations to the Circuit Court for the City of Lynchburg (trial court).[1]

A trial was held on December 7, 2016. An LDSS employee testified to the conditions that caused LDSS to remove the children and detailed the allegations against appellant and Ayers. That same employee observed supervised visitations between appellant and the children--those ceased upon appellant's incarceration. At the first visit, "[A.] immediately . . . placed a toy doll house . . . in front of her." She crawled away from appellant and put larger toys between her and appellant, preventing contact. She turned away from appellant's displays of affection. For days after visitations, A. would cry, kick, and scream. She exhibited those behaviors outside of the home and experienced a night terror at her foster home.

LDSS was also concerned about appellant's housing status, substance abuse, and mental health issues. Appellant did not have adequate housing; he currently sleeps on the couch of a friend's one-bedroom apartment, and the family had a "pattern of homelessness and transient living." Appellant was willing to engage in psychiatric services but would only attend monthly outpatient therapy and refused to sign releases to speak with workers at Horizon. Ultimately, appellant did not seek treatment for those issues. However, appellant did complete the psychological assessment, which was conducted by Dr. Anderson. Dr. Anderson testified that appellant indicated he was diagnosed with depression, bipolar disorder, and post-traumatic stress disorder. Appellant also experienced command auditory hallucinations, ordering him to kill or harm someone or children. Dr. Anderson noted appellant posed a risk to anyone under his care.

---

[1] The J&DR court terminated Ayers' parental rights on May 20, 2016. She appealed. The trial court heard the matter on September 1, 2016. After the hearing and "upon written signed election not to appeal the Termination of Parental Rights . . . on 18 August 2016," the trial court dismissed her appeal.

Appellant was alcohol and cannabis dependent. He also admitted to using powder cocaine. Appellant has an extensive criminal history in addition to the felony child sex offense in Michigan, including a concealed weapons charge, marijuana possession charges, and assault charges. Appellant is "extremely narcissistic" and "would . . . have difficulty giving his children's needs priority." Dr. Anderson also noted that appellant would have "difficulty maintaining a stable parental presence in the home on a consistent basis over time." Appellant demonstrated inappropriate responses to routine child-rearing hypotheticals. Dr. Anderson testified that if appellant did not engage in LDSS services, then it would be "very unlikely" that he would make sufficient progress.

An LDSS employee testified that relative placement was not a viable option for the children. When LDSS requested relative placement options, the names Ayers provided were not suitable. Ayers also indicated her family sexually abused her. Appellant failed to respond.

Regarding the goal change to adoption, LDSS employees noted it was in the children's best interest. Appellant "was not able to demonstrate any measure of stability. When he was not in jail, he did not have suitable hous[ing. The] children now have been in foster care for over a year and a half and have adjusted very well and bonded closely with their foster parents." Upon entering the foster care environment, A. displayed disturbing behavior and was very protective of L.R. Now, however, the children are "jovial, happy, . . . [and] imaginative." They have made friends and are quicker to trust and to love.

In his case-in-chief, appellant testified that as part of the terms of his probation requirements, he did not have contact with the children while incarcerated. Appellant returned to Michigan shortly after being released from jail in June 2016, explaining that he could not find employment in Virginia due to his sex offender status. He is now employed and is looking for a

home for him and the children. Appellant stated that he has controlled his substance abuse issues since January.

Appellant noted that his work schedule prevented him from engaging in any other services, but he would attend counseling if it was court-ordered. Appellant discussed his plan of care for children: he requested that custody be transferred to the DSS in Michigan and that he planned on having his mother and a full-time, live-in nanny help raise the children. He indicated he was actively searching for a four-bedroom house on a $2,800 monthly salary. This plan has been in place for six weeks.

At the conclusion of all the evidence, appellant made a motion to strike, arguing that LDSS did not present the requisite evidence to support the change in goal nor the termination of his parental rights. The trial court denied the motion.

The trial court found that appellant made "significant progress recently" regarding securing employment and maintaining sobriety. It then denied appellant's request for additional time to substantially remedy conditions. The trial court found that instead of complying with services set forth by LDSS, appellant continued to reoffend. The trial court explained that the statutory time frame existed to ensure that the children had a stable environment and continuity and noted that the children have been in foster care for over a year. Although the statute does provide for some flexibility, appellant still has not remedied LDSS's concerns. Appellant failed to secure appropriate housing. While appellant stated that he is no longer abusing substances, appellant did not address his mental health and substance abuse issues through treatment. This demonstrated to the trial court that appellant did not substantially remedy conditions placing the children into foster care. The trial court then indicated that it was not in the best interest to uproot the children and send them to a different foster care home in Michigan. Appellant's recent progress was "much too little much too late."

On January 3, 2017, the trial court ordered the termination of appellant's parental rights under Code § 16.1-283(C)(2), finding that it was in the children's best interest and that the clear and convincing evidentiary standard had been met. It then approved the foster care plan, finding by a preponderance of the evidence that LDSS made reasonable efforts to reunite appellant and the children, "has identified a permanent goal [of adoption] for each of the children other than returning them home[,] and reasonable efforts have been made to achieve the permanent goals," and that "[t]he permanent goal of adoption is achievable for each of the children at this time." Appellant noted his objection to both of those determinations on the ground of sufficiency.

Now comes this appeal.

ANALYSIS

"When reviewing a termination of a parent's residual parental rights, we must acknowledge that '[t]he termination of residual parental rights is a grave, drastic[,] and irreversible action.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 342, 361, 719 S.E.2d 313, 322-23 (2012) (quoting Helen W. v. Fairfax Cty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991)). "While recognizing the seriousness of such a determination," id. at 361, 719 S.E.2d at 323, we presume that the trial court has "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). "[T]he paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

> In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and

- 7 -

such other factors as are necessary in determining the best interests of the child or children.

Eaton v. Washington Cty. Dep't of Soc. Servs., 66 Va. App. 317, 331, 785 S.E.2d 231, 239 (2016) (quoting Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 161, 590 S.E.2d 575, 581-82 (2004)).

It is well-settled that

> [w]hen a defendant in a civil or criminal case proceeds to introduce evidence [o]n his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's evidence in chief, he waives his right to stand upon such motion. Plaintiff's case may be strengthened by defendant's evidence. *If thereafter a motion is made to strike the evidence or to set aside the verdict, the court must consider the entire record in reaching its conclusion.*

Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 73-74, 688 S.E.2d 199, 204 (2010) (emphasis added) (quoting Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). We will view the evidence in the light most favorable to LDSS, the prevailing party below, and grant it all reasonable inferences fairly deducible from the evidence. Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

## A. Goal Change

Appellant argues that the trial court erred in denying his motion to strike. He specifically contends that LDSS did not present sufficient evidence to support the trial court's approval of the revised foster care plan. "Proof by a preponderance of the evidence is the appropriate standard in this case." Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996). Code § 16.1-282.1 provides that

> a permanency planning hearing shall be held within 11 months of the dispositional hearing at which the foster care plan . . . was reviewed if the child . . . (b) is under the legal custody of a local board of social services . . . and has not had a petition to terminate parental rights filed on the child's behalf . . . . The board or child welfare agency shall file a petition for a permanency planning hearing within 10 months of the dispositional hearing at which the foster care plan was reviewed pursuant to § 16.1-281. The purpose of this hearing is to establish a permanent goal for the child and either to achieve the permanent goal or to defer such action through the approval of an interim plan for the child.

Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 328-29, 746 S.E.2d 509, 525 (2013) (quoting Code § 16.1-282.1).

The J&DR court adjudicated that the children were at risk of or were abused or neglected on July 6, 2015. At the dispositional hearing on August 3, 2015, the J&DR court reviewed and approved the foster care plan which identified the goals of "return home/relative placement." A foster care review hearing was set for November 25, 2015. Appellant was arrested for failing to register as a sex offender and was incarcerated until early November. Upon his release, appellant met with an LDSS employee who recommended the following services: psychological assessment, services at Horizon, weekly outpatient therapy, psychiatric services, and intensive wrap around services. Appellant underwent a psychological evaluation but did not engage in any other services. Shortly thereafter, appellant was arrested and was continuously incarcerated for probation violations.

LDSS then changed its goals for the children to "relative placement/adoption" in its March 21, 2016 petition. At the April 20, 2016 hearing, the J&DR court found that reasonable efforts were made to reunite the children with appellant, that LDSS identified a permanent goal other than return home, and that reasonable efforts were made to achieve that goal. The J&DR court subsequently approved the foster care plan and terminated appellant's parental rights,

noting that it was in the best interests of the children. Appellant appealed both determinations to the trial court.

Turning to the factors a court considers when analyzing the best interests of the children, A. and L.R. were twenty months and six months of age upon entering into LDSS's custody. Before appellant was incarcerated, there were allegations against him and Ayers in two different states regarding their abuse and neglect of A. and L.R. There was evidence that the children were sexually abused while in their parents' care. Although employed, appellant did not engage in recommended services and instead chose to reoffend; he was also unable to provide stability for his children. When he was not incarcerated, he did not obtain suitable housing and crafted a tenuous plan of care in the event that the children were returned to his care. He also did not seek treatment for his substance abuse and severe mental health issues, which included auditory command hallucinations ordering appellant to harm people and children. And the only evidence the trial court had that appellant was substance-free was appellant's own testimony. With regard to creating a stable environment for the children, the children have been in their current foster care home for over 18 months. Transferring the children to another foster care home in Michigan would undermine the stability and continuity that the children currently have. A. no longer displays disturbing behaviors, and both children are "jovial, happy, . . . [and] imaginative[,]" have made friends, and are quicker to trust and to love.

The trial court approved adoption as a permanent goal and noted it was in the children's best interest. Considering the entire record, that finding was supported by the evidence and not plainly wrong.

## B. Termination of Parental Rights

Appellant argues that the trial court erred in denying his motion to strike. He specifically contends that LDSS did not present sufficient evidence pursuant to Code § 16.1-283(C)(2)

[hereinafter (C)(2)] to support the trial court's termination of appellant's parental rights. Proof by clear and convincing evidence is the appropriate standard. Fields, 46 Va. App. at 7, 614 S.E.2d at 659.

(C)(2) states that a parent's residual rights may also be terminated when "it is in the best interests of the child and that:"

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The trial court found that termination was in the best interests of the children.[2]

Regarding whether appellant substantially remedied conditions which led to or required the continuation of the children's placement in foster care, instead of trying to regain custody of his children, appellant chose to reoffend multiple times. Appellant did not engage in any LDSS-recommended services other than undergoing a psychiatric evaluation. He refused to sign releases which would allow LDSS's employees to speak with workers at Horizon. Appellant failed to remedy LDSS's additional concerns regarding housing and stability. Upon being released for the final time, appellant subsequently moved to Michigan to seek employment. Appellant seemingly made progress outside of the twelve-month statutory window in that he found employment and is currently substance-free, but as the trial court noted, these efforts were "much too little much too late."

Considering the entire record, that finding was supported by the evidence and was not plainly wrong.

---

[2] See supra text on pages 10-11 discussing the best interests of the children.

CONCLUSION

Considering the entire record, the trial court did not err in denying appellant's motion to strike. The trial court was not plainly wrong and had ample evidence to support its approval of adoption as a permanent goal and termination of appellant's parental rights under Code § 16.1-283(C)(2). Therefore, we will not disturb the trial court's findings on appeal.

Affirmed.